ROBINSON, Appellant, v. KUNACH, and another, Respondents.†

*No. 75–536.   Argued January 31, 1977.—Decided March 15, 1977.*
(Also reported in 251 N. W. 2d 449.)

† Motion for rehearing denied, with costs, on July 1, 1977.

438

For the appellant there were briefs by *Korth, Rodd, Sommer & Mouw, S. C.,* and oral argument by *James A. Johnson,* all of Rhinelander.

For the respondents there was a brief and oral argument by *Lawrence R. Heath,* corporation counsel for Oneida County.

ROBERT W. HANSEN, J. There were seven counts to plaintiff's complaint, five to which demurrer was sustained and two as to which summary judgment for defendants was granted. Trial court action as to all seven

counts is before us and we will deal with each count separately. However, since both plaintiff and defendants devoted all of their oral argument on appeal to the second count, we will begin discussion with the second cause of action pleaded and the demurrer sustained thereto.

*CAUSE OF ACTION NO. 2.*

We are faced here with the question of whether or not the relocation of a county trunk highway requires the filing of an environmental impact statement. We deal only with the narrow question as to whether a county is an agency of the state as that phrase is used in sec. 1.11 (2) (c), Stats.[1] We do not deal with the broad underlying question of public policy as to whether counties in this state ought be required to file such statement before proceeding with highway construction.

We will only determine whether a county was intended to be included within that section. The trial court here ruled a county was not one of the "agencies of the state" referred to in sec. 1.11(2) (c), the Wisconsin Environ-

---

[1] "(2) All agencies of the state shall:

"(c) Include in every recommendation or report on proposals for legislation and other major actions significantly affecting the quality of the human environment, a detailed statement, substantially following the guidelines issued by the United States council on environmental quality under P.L. 91–190, 42 U.S.C. 4331, by the responsible official on:

"1. The environmental impact of the proposed action;

"2. Any adverse environmental effects which cannot be avoided should the proposal be implemented;

"3. Alternatives to the proposed action;

"4. The relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and

"5. Any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented;

"6. Such statement shall also contain details of the beneficial aspects of the proposed project, both short term and long term, and the economic advantages and disadvantages of the proposal."

mental Protection Act. It is that ruling that is here challenged.

Whether the requirement of environmental impact statements applies to counties or refers only to the executive and administrative agencies of the state (as enumerated in ch. 15 of the statutes) [2] is the question. Sec. 1.11 (2) (c) is ambiguous. The phrase "agencies of the state" is not defined in the statute. So the statute on its face is capable of being understood by reasonably well-informed persons either as applying to or not applying to counties. And that is the test of ambiguity. [3] Since the statute is ambiguous, capable of being understood in either of two senses by reasonably well-informed persons, we consider the legislative history of the statute to determine legislative intent.

In checking the legislative history of the environmental impact statute, it is apparent that no fiscal note is presently dealing with local government costs in preparing environmental impact statements. Such fiscal note must include ". . . a reliable estimate of the anticipated change in appropriation authority or state *or general local government fiscal liability* or revenues *under the bill,* including to the extent possible a projection of such changes in future biennia." [4] No such fiscal note as to

---

[2] Ch. 15, Stats., entitled STRUCTURE OF THE EXECUTIVE BRANCH, dealing with the "constitutional offices, administrative departments and independent agencies which comprise the executive branch of Wisconsin State government." (Sec. 15.02, Stats.)

[3] In *Madison Metropolitan Sewerage Dist. v. DNR,* 63 Wis.2d 175, 179, 216 N.W.2d 533 (1974), this court stated the test of ambiguity has been consistently reiterated: " ' ". . . A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." ' " Citing *Milwaukee Fire Fighters Asso. v. Milwaukee* 50 Wis.2d 9, 13, 183 N.W.2d 18 (1971); *Kindy v. Hayes,* 44 Wis.2d 301, 171 N.W.2d 324 (1969).

[4] Sec. 13.10 (2) (a), Stats. [Emphasis supplied.]

county fiscal liability or projected future costs is attached to the bill creating sec. 1.11 (2) (c), Stats.

In fact, no mention whatever is made as to funding of county participation in the state environmental impact act. Such omission of county fiscal liability in preparing impact statements and the concommitant costs thereof clearly indicates the legislature did not intend to include counties. That is, only if such were the legislative intent would sec. 13.10, Stats., not be violated.

This finding as to legislative intent to exclude counties is buttressed by the fact that an amendment providing state funds to local governments for preparing impact statements was introduced but not included in the final measure. This amendment, providing for reimbursement to local governments, at the least made clear the requirement of a fiscal note if local governments were covered. More than that, this suggested strongly that no mention of funding for local government impact statements was made because such local units were not reached by sec. 1.11 (2) (c), Stats., as introduced and as enacted. Silence can be as eloquent as words, and here the complete silence as to fiscal liability of counties is persuasive that counties were not legislatively intended to be governed by the law.

Moreover, where the state legislature intended a county to be an "agency of the state," it has so provided. Thus, in ch. 92, Stats., entitled *Soil and Water Conservation*, it is specifically made clear that "Wherever used or referred to *in this chapter*" the phrase "agency of this state" includes the government of the state "and any subdivision, agency or instrumentality, corporate or otherwise, of the government of this state."[5] [Emphasis supplied.]

---

[5] Sec. 92.03 (7), Stats.

It can be argued that this is intended to define the term "agency of the state" wherever used in the statutes, but this argument encounters the limitation to "Wherever used or referred to *in this chapter*." [Emphasis supplied.] We see as more reasonable the inference that where in a particular statute the legislature intends "agency of the state" to include local subdivisions of government, it will so state. Where no identification of counties as "agencies of the state" is made, we find a strong suggestion that where they are not included by legislative definition, it is not intended they become included by judicial construction.

Where an ambiguity exists in a statute the interpretation by the administrative agency charged with the duty of applying such statute is given great weight by this court.[6] It is true that construction of a statute is a question of law and therefore this court is not bound by the interpretation given to a statute by an administrative agency.[7] However the interpretation by the agency which applies the statute has great bearing on the determination as to what the appropriate construction should be.[8]

If several rules or several applications of a rule are equally consistent with the purpose of the statute, our court will accept the agency's formulation and application of the standard.[9] Thus where there was no clear

---

[6] *Milwaukee v. WERC*, 71 Wis.2d 709, 715, 239 N.W.2d 63 (1976). *See also: Libby, McNeill & Libby v. Wisconsin E. R. Comm.*, 48 Wis.2d 272, 179 N.W.2d 805 (1970).

[7] *Id.* at 714. *Amans v. H&SS Department*, 70 Wis.2d 892, 236 N.W.2d 279 (1975).

[8] *Id.* at 714. *Cook v. Industrial Comm.*, 31 Wis.2d 232, 240, 142 N.W.2d 827 (1966).

[9] *Id.* at 715, citing *Milwaukee Transformer Co. v. Industrial Comm.*, 22 Wis.2d 502, 510, 126 N.W.2d 6 (1964).

legislative mandate as to an appropriate definition of a term used in a statute, and it was incumbent upon the state employment relations commission to formulate a standard to be followed, this court approved the application of the statute as determined by the employment relations commission, finding it to be reasonable and consistent with the purpose of the statute.[10]

As to sec. 1.11(2)(c), Stats., now before us, the responsibility for its implementation and application was on the governor of this state. Soon after sec. 1.11 was enacted into law, Governor Patrick J. Lucey sent out an executive order directing compliance with the new law. All state agencies listed in ch. 15, Stats., including boards and commissions, were directed to comply with the guidelines for administration of sec. 1.11.[11]

This executive order did not refer to counties and was not even sent to counties. Subsequently guidelines for the implementation of the environmental protection act were issued by the governor, once again not sent to counties and not referring to counties as included agencies.[12] Thereafter the executive department issued WEPA Agency Action Lists, as required by its guidelines, listing as affected agencies all state government agencies under ch. 15, Stats., but not including counties. Such exclusion was reaffirmed by revised guidelines issued on February 12, 1976.

---

[10] *Id.* at 716.

[11] Executive Order No. 69, issued by Governor Patrick J. Lucey.

[12] Guidelines for the Implementation of Wisconsin Environmental Policy Act, issued by Governor Patrick J. Lucey pursuant to Executive Order No. 69, relating to sec. 1.11, Stats. Question No. 3 in such guidelines asks "To what agencies does WEPA apply?" and the stated answer is: "WEPA applies to 'all agencies of the state.' It is assumed that the agencies referred to include the line agencies (including attached boards and commissions) as described in Chapter 15 of the Wisconsin Statutes."

■

While we deal here with an executive department interpretation, not an administrative agency interpretation, we find supportive of the construction we have given sec. 1.11, Stats., the fact that the executive department directives providing for its application and enforcement do not include counties as "agencies of the state," as that term is used in sec. 1.11.

We conclude counties are not "agencies of the state," within the provisions of sec. 1.11(2) (c), Stats., and not required by such statute to prepare and file environmental impact statements as a prerequisite to undertaking construction or relocation of county trunk highways. If they are to be required so to do, it will be for the legislature to add such requirement to sec. 1.11(2) (c) as an amendment thereto. With this major issue resolved—being the sole issue addressed during oral argument—we now turn to consider seriatim the trial court's disposition of the remaining six counts in plaintiff's complaint.

*CAUSE OF ACTION NO. 1.*

As and for her first cause of action plaintiff alleges the building of the proposed road across her property will deprive her of her rights under sec. 29.415, Stats. In sub. (1) of that statute the state legislature finds that "certain fish and wildlife are endangered and are entitled to preservation and protection as a matter of general state concern," and further finds "the activities of both individual persons and governmental agencies are tending to destroy the few remaining whole plant-animal communities in this state." So finding, the statute concludes by providing that "the legislature urges all persons and agencies to fully consider all decisions in this light."

■

Plaintiff contends this statute, as does sec. 1.11, Stats., reviewed above, requires that decisions reached as to construction of a county highway be made only with full

consideration of their impact upon endangered species of fish or wildlife. But the statute stops at "urging" rather than requiring such consideration of endangered species impact. To urge is to recommend but not to mandate or require. We hold the statute involved not to be proscriptive in nature, and not to form a basis for seeking injunctive relief against the proposed relocation of a county highway. The trial court's sustaining of demurrer to plaintiff's cause of action No. 1 is affirmed.

*CAUSE OF ACTION NO. 3.*

As the third count in her complaint plaintiff alleges that defendants have the statutory responsibility to cooperate and coordinate with the department of natural resources (DNR) in order to protect, maintain and improve the quality and management of the waters of this state, and that the defendants, and each of them, "have failed to obtain the necessary permits . . . failing to fully cooperate with the Department of Natural Resources." Mentioned in this count are permits from the DNR alleged to be required before construction of the county highway can proceed.[13]

Without now determining whether such permits are required before road construction can commence, we find two things wrong with plaintiff's contention. The first fatal weakness is that, assuming that none of required permits have been secured as of the present time, there is here no basis for assuming the defendants will not make timely application prior to the time when construction is to be actually commenced. Therefore any claim for injunctive relief on this score would be premature. The second fatal flaw is that the statutes referred to which require DNR permits in certain situations provide penalties for proceeding without securing the re-

---

[13] Plaintiff's complaint sets forth laws requiring permits from the department of natural resources for certain purposes, including: Secs. 30.10, 30.12, 30.15, 30.18, 30.19, 30.195 and 31.04, Stats.

quired permits. Remedies for noncompliance with such permit requirements lie in the field of forfeitures and not in the area of abatement actions by individual citizens.

Nothing in the general statute, sec. 144.025, Stats., delegating to the DNR the responsibility to "protect, maintain and improve the quality and management of the waters of the state" in any way changes the permit requirements or penalties for noncompliance with such requirements as specifically provided for by statute. The demurrer of defendants to plaintiff's third cause of action was properly sustained by the trial court.

*CAUSE OF ACTION NO. 4.*

Count four of plaintiff's complaint notes that sec. 29.546, Stats., prohibits the unpermitted cutting, uprooting, severing, injuring, destroying or unauthorized sale of any American lotus or any other species of plant enumerated in that section, and provides that the penalty for violating such section is a fine of not more than $100 and/or imprisonment of not more than six months per offense.[14] In this cause of action plaintiff alleges that defendants have uprooted lotus plants and other species mentioned in the statute "and will do so in the future should the proposed roadway project be continued."

While the complaint alleges on information and belief that American lotus and trailing arbutus plants "exist in and close to the area of the proposed roadway," it is difficult to see this statute as stopping a highway construction crew whenever it encounters a lotus or arbutus flower. If that were true, planting a lonely lotus flower in the pathway of a proposed highway would effectively force its relocation to a lotus-free route.

[14] *See:* Sec. 29.546, Stats., entitled *Lotus and other wild flowers protected.*

We need not, however, determine what happens when a road construction crew encounters a lotus flower. This statute is a criminal statute providing fine or imprisonment for its violation. Criminal statutes are to be strictly construed,[15] and the criminal sanctions set forth in the statute are the only penalties provided for its violation. Possible future violation of this statute under these circumstances is not a sound basis for seeking and securing injunctive relief against a proposed construction of a county highway. The trial court's sustaining of defendant's demurrer of count four of plaintiff's complaint is affirmed.

## CAUSE OF ACTION NO. 5.

As and for a fifth cause of action, plaintiff sets forth provisions in the Wisconsin Constitution which have "impressed all navigable waters in Wisconsin with a trust in favor of the public which requires that all such waters remain free for navigation, hunting and fishing, and for all other forms of recreation," and alleges that the highway relocation project "violates the defendants' responsibilities under said trust." However this count sets forth the fact that the Wisconsin legislature has "delegated to the levels of state government the fiduciary responsibility of administering, maintaining, and protecting the waters of this state."

Therefore we look to the statutes enacted pursuant to the public trust doctrine to determine if a cause of action exists. Our court has clearly held that the public trust doctrine in this state does not *per se* provide an affirmative cause of action in addition to those causes of action recognized by the state.[16] Rather, "[t]he public trust

---

[15] *Omernik v. State*, 64 Wis.2d 6, 11, 12, 218 N.W.2d 734 (1974).
[16] *State v. Deetz*, 66 Wis.2d 1, 13, 224 N.W.2d 407 (1974).

doctrine merely establishes standing for the state, or any person suing in the name of the state for the purpose of vindicating the public trust, to assert a cause of action recognized by the existing law of Wisconsin."[17]

Plaintiff has alleged, generally, a violation of the public trust doctrine by defendants, but, in this cause of action, alleges no violation of any statute enacted pursuant to such doctrine. The trial court in sustaining the demurrer to this fifth count, held it to be speculative and premature. We would add that a general allegation of violation of the public trust doctrine, in and by itself without more, does not state a cause of action. The sustaining of the demurrer to this cause of action is affirmed.

*CAUSE OF ACTION NO. 6.*

The sixth cause of action in plaintiff's complaint alleges that defendants "have proceeded to condemn a strip of land across plaintiff's land for the purpose of implementing said relocation project," but have failed to comply with the procedures mandated by sec. 32.05, Stats., requiring certain actions to be taken by condemnors in condemnation proceedings.[18] Specifically, plaintiff claims that a "jurisdictional offer" was sent to her by defendants, and requirements flowing therefrom have not been complied with by defendants. The precise issue involved concerns the nature of certain documents appended to the complaint and designated therein as Exhibits A–1 through A–6.

Review of these documents indicates that defendants referred to them at all times in their cover letter as a "right of way appraisal."[19] The three pages of standard

---

[17] *Id.* at 13.

[18] *See:* Secs. 32.04 and 32.05, Stats.

[19] If the challenged documents constitute a right-of-way appraisal, the procedural requirements of sec. 32.05, Stats., are *not* triggered.

printed forms consist of a first page which is entitled
RIGHT OF WAY APPRAISAL, a second page in which
the paragraphs do not follow the same numbering se-
quence established on the first page, and a third page
which is also entitled RIGHT OF WAY APPRAISAL.

Defendants' contention is that these pages constitute,
not a jurisdictional offer, but a right-of-way appraisal,
with the second page inadvertently consisting of one page
of a jurisdictional offer. In support of this contention
defendants have submitted three affidavits—one from
defendant highway commissioner, another from the
chairman of the county highway committee, and the third
from the highway department employee who mailed the
form to plaintiff.

These all state that the second page was inserted by
mistake between the first and third pages of a right-of-
way appraisal form, and that the mailing was intended to
be a right-of-way proposal, not a jurisdictional offer.
Plaintiff responded with an affidavit, repeating the alle-
gations of the complaint but not challenging the claim
of mistake made or purpose intended.

Our court has prescribed a precise methodology for the
aid of trial courts in determining whether the case then
before them is an appropriate one for disposition by sum-
mary judgment.[20] We now apply the applicable portion
of such prescribed step-by-step procedure to the case
before us. Since a cause of action has been pleaded and
a factual issue as to the nature of a particular document
presented, the trial court is required to examine "the
moving party's (defendant's) affidavits . . . to deter-
mine whether a prima facie defense has been estab-
lished."[21]

---

[20] See: *Peninsular Carpets, Inc. v. Bradley Homes, Inc.*, 58 Wis.
2d 405, 410, 206 N.W.2d 408 (1973), citing *Marshall v. Miles*, 54
Wis.2d 155, 160, 161, 194 N.W.2d 630 (1972).

[21] *Id.* at 410, 411.

Then, if the moving party has made a prima facie case for summary judgment, the trial court examines "the opposing party's (plaintiff's) affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences can be drawn, sufficient to entitle the opposing party to a trial."[22] This is the methodology evidently followed by the trial court here and to be followed by this court on review.

Here we have the sworn testimony of three county officials that an improper second page was included in a three-page form by mistake—*i.e.*, the jurisdictional offer page inadvertently inserted into the right-of-way appraisal form. The plaintiff's counter-affidavit does no more than repeat the allegations of her complaint. It is thus clear the trial court was entitled to find no material issue of fact or possibility that reasonable alternative inferences could be drawn. Accordingly, the trial court was entitled to enter summary judgment for defendants as to this sixth cause of action. Its so doing is affirmed.

*CAUSE OF ACTION NO. 7.*

The seventh and final count in plaintiff's complaint alleges that defendants ordered a survey of the proposed relocation roadway and that under color of that order surveyors trespassed on plaintiff's land. Plaintiff seeks damages for such trespass in the amount of $5,000. It is undisputed that defendants' agents entered upon plaintiff's land for the purpose of performing survey and appraisal work preparatory to the planning and construction of the highway.

Without reaching the issue raised as to the right of a county to cause a survey to be made when necessary to

---

[22] *Id.* at 411.

aid in the construction of a highway,[23] we agree with the trial court this is not a presently actionable claim. This is because plaintiff has failed to allege or comply with sec. 895.43, Stats., requiring notice in tort actions against governmental subdivisions and officers[24] and with sec. 59.76, Stats., requiring presentation of a claim for money damages to a county board prior to instituting court action.[25]

Where a party plaintiff brought suit against the city of Whitewater, *e.g.*, without having complied with either

[23] *See:* Secs. 80.39(3), 83.015(2) and 83.025, Stats.

[24] Sec. 895.43(1), Stats., providing: "No action founded on tort, except as provided in s. 345.05, shall be maintained against any . . . governmental subdivision or agency thereof nor against any officer, official, agent or employe of such corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment unless within 120 days after the happening of the event causing the injury or damage or death complained of, written notice of the time, place and circumstances of the injury . . . is served on such . . . governmental subdivision or agency and on the officer, official, agent or employe under s. 262.06. Failure to give the requisite notice shall not bar action on the claim if the . . . subdivision or agency had actual notice of the damage or injury and the injured party shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial. . . ."

[25] Sec. 59.76(1), Stats., providing: "(1) No action shall be brought or maintained against a county upon any account, demand or cause of action when the only relief demandable is a judgment for money, except upon a county order, unless the county board shall consent and agree to the institution of such action, or unless such claim shall have been duly presented to such board and they shall have failed to act upon the same within the time fixed by law. No action shall be brought upon any county order until the expiration of thirty days after a demand for the payment thereof has been made; and if an action is brought without such demand and the defendant fails to appear and no proof of such demand is made, the court or the clerk thereof shall not permit judgment to be entered, and if judgment is entered it shall be absolutely void."

the notice of claim or filing of claim statutes, this court held: "Therefore, in order for plaintiff to have successfully defeated the city's motion for summary judgment, it was necessary that he either have complied with both sec. 895.43 (formerly sec. 331.43) and sec. 62.25, or have presented facts which raised a disputed factual issue with respect to such compliance."[26] Count seven of plaintiff's complaint does not allege compliance nor existence of a disputed factual issue with respect to such compliance with the requirements of secs. 895.43 or 59.76, Stats., so the trial court's granting of summary judgment to defendants as to the seventh cause of action pleaded must be affirmed.

The seven-stop journey is thus completed. We affirm the trial court's sustaining of defendants' demurrers to the first five counts of plaintiff's complaint, and affirm the trial court's granting of summary judgment to defendants as to the sixth and seventh causes of action pleaded in the complaint.

*By the Court.*—Judgment and order affirmed, with costs to defendants.

---

[26] *Pattermann v. Whitewater*, 32 Wis.2d 350, 358, 145 N.W.2d 705 (1966).