IN RE the MARRIAGE OF:

Kathryn KRANZ, Petitioner-Respondent,

v.

William P. KRANZ, Jr., Respondent-Appellant.†

Court of Appeals

*No. 93–0114. Submitted on briefs September 13, 1994.—Decided November 23, 1994.*

(Also reported in 525 N.W.2d 777.)

†Petition to review denied.

For the respondent-appellant the cause was submitted on the brief of *David A. Schumann* of *Schumann Law Firm* of Janesville.

For the petitioner-respondent, State of Wisconsin, the cause was submitted on the brief of *David L. Belling*, Rock County Assistant Corporation Counsel of Janesville.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. William Kranz appeals from an order denying his motion to expunge child support arrearages and finding him in contempt for failing to pay the child support ordered in a 1984 Wisconsin judgment, divorcing him and Kathryn Kranz. The issues are whether the order of a Pennsylvania court in an action brought under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA),[1] modified the

---

[1] This RURESA action was filed under § 52.10, STATS., 1983-84. Section 52.10 was renumbered as § 767.65, STATS. 1985 Wis. Act 29, §§ 1120-1123. 1993 Wis. Act 326, §§ 13-14 repealed § 767.65 (RURESA) and created ch. 769, STATS., the Uniform Interstate Family Support Act. UNIF. INTERSTATE FAMILY SUPPORT ACT, 9 U.L.A. Supp. 121 (1994).

child support provision of the Wisconsin divorce judgment, and whether Wisconsin is equitably estopped from attempting to recover support arrearages. We conclude that the Pennsylvania order did not modify the Wisconsin judgment and that equitable estoppel does not apply. We therefore affirm.

## I.  Background

William and Kathryn were divorced in Rock County, Wisconsin in June 1984. The divorce judgment requires William to pay $100 per week child support for the parties' minor children. William stopped supporting the children in May 1985. Kathryn began receiving AFDC payments.

In October 1985, Kathryn and the State commenced a RURESA action in the Rock County circuit court—with Kathryn as the named petitioner[2]—against William, who was then living in

---

[2] A person having legal custody of a minor may file a petition on behalf of a minor to whom a duty of support is owed without appointment as guardian ad litem. Section 52.10(13), STATS., 1983-84. A person to whom a duty of support is owed may be a recipient of public assistance. Section 52.10(2)(f).

Under the "complaint procedure" outlined in § 52.10(11)-(25), STATS., 1983-84, an "obligee" petitions the appropriate court of the state in which the obligee resides. An "obligee" is a person, including a state or political subdivision, to whom a duty of support is owed or who has commenced a proceeding for enforcement of an alleged duty of support. Section 52.10(2)(f) . If a state or political subdivision furnishes support to an individual obligee, as is the case here, it has the same right to initiate a proceeding under RURESA as the individual obligee for the purpose of securing reimbursement for support furnished and of obtaining continuing support. Section 52.10(8).

If the initiating court determines that the obligor, in this case William, owes a duty of support and that a court of the

Pennsylvania. The petition alleged that William resided within the jurisdiction of the Common Pleas Court of Berks County, Pennsylvania and requested that the Pennsylvania court order him to pay reasonable child support, which Kathryn averred was $100 per week plus an additional amount toward arrearages of $2,536.74. The Rock County court certified the matter to the Pennsylvania court under RURESA. Section 52.10(14), STATS., 1983-84.

On February 10, 1986, the Court of Common Pleas of Lehigh County, Pennsylvania[3] ordered William to pay thirty-five dollars per week child support and five dollars per week toward arrearages, effective October 22, 1985.[4] The order provided that arrearages "in the amount of $2,536.74 [the amount Kathryn averred was due] transferred from Wisconsin [are] accepted . . . ." William generally met his obligation under the Pennsylvania order, Pennsylvania forwarded his payments to the child support unit in Rock County, Wisconsin, and he received credit in Wisconsin for the payments.

In order to enforce the Wisconsin judgment, Wisconsin intercepted William's income tax refunds in

responding state, in this case Pennsylvania, may obtain jurisdiction over the obligor or the obligor's property, it so certifies and sends copies of the petition and certificate to the responding state. Section 52.10(14), STATS., 1983-84. The responding court notifies the attorney responsible for support enforcement to take action necessary for the court to obtain jurisdiction over the obligor or his property, holds a hearing, and if it finds a duty of support it may order the obligor to furnish support. Section 52.10(19), (24). The responding court then sends a copy of its order to the initiating court. Section 52.10(25).

[3] The petition incorrectly alleged that William lived in Berks County. He lived in Lehigh County.

[4] October 22, 1985, is the date of Kathryn's petition.

July 1987 and July 1990. In January 1992, William moved the Rock County court to hold that the Pennsylvania order modified the support ordered in the Wisconsin judgment, to amend the arrearages shown in Rock County's records accordingly, and to order Wisconsin to stop intercepting his income tax refunds. Wisconsin sought a show cause order why William should not be held in contempt for failing to comply with the Wisconsin judgment and committed to jail until the contempt is purged. The court so ordered.

At the motions hearing in Rock County, William argued that the Pennsylvania order modified the Wisconsin judgment. Because he had generally complied with that order, except for several missed payments, he argued that the Rock County court should not hold him in contempt and should expunge any arrearages that accrued under the Wisconsin judgment after the effective date of the Pennsylvania order. The court rejected William's argument, denied his motion to amend arrearages, set arrearages at $23,184.74 as of May 4, 1992,[5] and found him in contempt for failing to comply with the Wisconsin divorce judgment. William moved for reconsideration. After a hearing in October 1992, the court denied William's motion, ordered that he serve a ninety-day jail sentence as a contempt sanction, and ordered that he may purge himself of contempt by paying child support of $100 per week plus $25 per week toward arrearages. William appeals.

---

[5] The Rock County court arrived at this amount by deducting the amount William paid pursuant to the Pennsylvania order from the amount he owed under the Wisconsin judgment. Section 52.10(31), STATS., 1983-84; 42 PA. CONS. STAT. ANN. § 6771 (1984).

## II. Effect of RURESA Order on Wisconsin Judgment

William argues that the Pennsylvania order prospectively modified the Wisconsin judgment until the Rock County, Wisconsin court entered its October 1992 order. We conclude that the Pennsylvania order did not modify the Wisconsin judgment.

Because RURESA is a uniform act which was in effect in both Wisconsin and Pennsylvania during the relevant period, *see* § 52.10, STATS., 1983-84 and 42 PA. CONS. STAT. ANN. CH. 67 (1984), we must construe it so as to make uniform the law of those states that enact it. Section 52.10(41). The purposes of RURESA are to improve and extend by reciprocal legislation the enforcement of duties of support. Section 52.10(1). "[RURESA] itself creates no duties of family support" and "is concerned solely with the enforcement of the already existing duties when the person to whom a duty is owed is in one state and the person owing the duty is in another . . . ." RURESA prefatory note, 9B U.L.A. 381, 382 (1987). The remedies RURESA provides are in addition to, and not in substitution for, any other remedies. Section 52.10(3).

Neither party disputes that the Pennsylvania court, as the responding court, could properly order support in an amount different from that ordered in the Wisconsin judgment. Section 7 of Pennsylvania's RURESA provides, "[d]uties of support applicable under this subchapter [RURESA] are those imposed under the laws of any state where the obligor was present for the period during which support is sought." 42 PA. CONS. STAT. ANN. § 6747 (1984); RURESA § 7, 9B U.L.A. at 423. William was present in Pennsylvania for the relevant period. As we said in *Horch v. Ponik*, 132 Wis. 2d 373, 379, 392 N.W.2d 123, 126 (Ct. App. 1986),

"the duty of support [in a RURESA action] is determined by the law of the responding state without regard to orders or judgments of foreign courts; a responding court is not bound to conform its order to a foreign order."[6]

William contends, however, that RURESA does not contemplate "concurrent support orders running concurrently." He asserts that the "plain language" of § 7 of RURESA, the "Choice of Law" provision, requires that while the Pennsylvania order was in effect, it was the only valid and enforceable support order, and as long as he met his duty under it, no arrearages could accrue under the Wisconsin judgment. RURESA § 7, 9B U.L.A. at 423; 42 PA. CONS. STAT. ANN. § 6747 (1984). We disagree.

As we said, Pennsylvania's RURESA provides, "[d]uties of support applicable *under this subchapter* [RURESA] are those imposed under the laws of any state where the obligor was present for the period during which support is sought." 42 PA. CONS. STAT. ANN. § 6747 (1984) (emphasis added). In his reply brief, William misquotes the statute by omitting the words "under this subchapter." Those words are crucial. They show that the statute refers only to William's duty

---

[6] Other courts applying RURESA have concluded that a responding court can order prospective support in an amount different from that specified in the divorce judgment. *See Britton v. Floyd*, 738 S.W.2d 408, 410 (Ark. 1987); *Florida, Dep't of Health and Rehabilitative Servs. v. Franklin*, 630 So. 2d 661, 664-65 (Fla. Dist. Ct. App. 1994); *In re Marriage of Head*, 543 N.E.2d 345, 347 (Ill. App. Ct. 1989); *Miskimon v. Miskimon*, 433 N.W.2d 419, 421 (Mich. Ct. App. 1989); *Dike v. Dike*, 512 N.W.2d 363, 366 (Neb. 1994); *Thompson v. Thompson*, 366 N.W.2d 845, 847-48 (S.D. 1985); *Kammersell v. Kammersell*, 792 P.2d 496, 498 (Utah Ct. App. 1990).

under RURESA, his Pennsylvania duty. He has a separate duty to support his children under the Wisconsin judgment.

As noted, RURESA's remedies are in addition to, and not in substitution for, any other remedies. Section 52.10(3), STATS., 1983-84. The Pennsylvania support duty is a RURESA remedy. It does not take the place of Kathryn's and Wisconsin's non-RURESA remedies, such as seeking enforcement of the Wisconsin judgment.

Moreover, RURESA's § 31, as enacted in both Pennsylvania and Wisconsin, shows that the Pennsylvania support order ran concurrently with the Wisconsin judgment's support order. 42 PA. CONS. STAT. ANN. § 6771 (1984); § 52.10(31), STATS., 1983-84. RURESA's § 31 provides in pertinent part: "Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State." This provision contemplates that two independently valid support orders, requiring support payments in different amounts, can be in effect at the same time.

■

William bases his next contention on the first sentence of RURESA § 31:

> A support order made by a court of this State pursuant to [RURESA] does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court.

Section 52.10(31), STATS., 1983-84; 42 PA. CONS. STAT. ANN., § 6771 (1984). William claims that although this section prohibits a responding court from nullifying another court's order, unless specifically provided, it does not prohibit the responding court from prospectively modifying the other court's order. He contends that when a responding court orders an obligor to pay support in an amount different from that ordered in the prior judgment and greater than zero, the support ordered in the prior judgment is merely "modified." He asserts that a responding court nullifies the support ordered in the prior judgment only if it extinguishes the support duty, and that the Pennsylvania order modified his Wisconsin support duty. We reject his modification argument. Were we to accept it, a responding court could set support at a nominal amount without nullifying the support ordered in the judgment. We cannot believe that by prohibiting nullification the drafters of RURESA § 31 intended that unreasonable result. We conclude that a responding court's order that does not explicitly nullify the support ordered in the prior judgment does not modify the prior judgment or affect its enforceability.[7]

Rather than modify the Wisconsin judgment, the Pennsylvania court met its duty under 42 PA. CONS. STAT. ANN. § 6747 (1984) (RURESA § 7) to determine William's obligation under RURESA according to Pennsylvania law. Section 7 recognizes that the laws used to set child-support obligations differ from state to state, and directs a responding court to use its own laws to set support. It is sensible to require a respond-

_____

[7] The Pennsylvania order did not purport to nullify the support ordered in the Wisconsin judgment. It set William's support obligation and provided that "arrearages in the amount of $2,536.74 transferred from Wisconsin [are] accepted . . . ."

ing court to enforce only the level of support it determines is reasonable under its laws. That determination does not affect the enforceability of the support ordered in the initiating court's prior judgment.

Further, if a responding court's order were to take the place of the prior judgment, a custodial parent would be discouraged from initiating a RURESA case, knowing that he or she risked a downward modification of support. RURESA is intended to improve and extend enforcement of duties of support. RURESA § 1; § 52.10(1), STATS., 1983-84. We refuse to read RURESA as requiring the custodial parent to engage in a game of chance.

William cites *Sullivan v. Sullivan*, 424 N.E.2d 957 (Ill. App. Ct. 1981), to support his argument that a responding court's order modifies the prior order. However, in a more recent case, *In re Marriage of Head*, 543 N.E.2d 345, 347 (Ill. App. Ct. 1989), the Illinois appellate court concluded that, in the absence of a clear statement of intent to nullify, when a responding court orders a lower amount than that ordered in the divorce, the original order remains unmodified and the responding court's order simply provides an additional enforcement remedy. Additionally, in *In re Marriage of Casey*, 556 N.E.2d 271, 272-73 (Ill. App. Ct. 1990), the Illinois court concluded that a support order issued pursuant to RURESA did not affect an earlier divorce judgment's order of support.

Most jurisdictions that have decided whether the duty established by the responding court under RURESA displaced the prior duty have concluded that it did not. *See Britton v. Floyd*, 738 S.W.2d 408, 409-10 (Ark. 1987); *Florida, Dep't of Health and Rehabilitative Servs. v. Franklin*, 630 So. 2d 661, 665 (Fla. Dist. Ct. App. 1994); *In re Marriage of Head*, 543 N.E.2d 345,

347 (Ill. App. Ct. 1989); *Wornkey v. Wornkey,* 749 P.2d 1045, 1050 (Kan. Ct. App. 1988); *Miskimon v. Miskimon,* 433 N.W.2d 419, 422 (Mich. Ct. App. 1989); *Campbell v. Jenne,* 563 P.2d 574, 577 (Mont. 1977); *Thompson v. Thompson,* 366 N.W.2d 845, 847-48 (S.D. 1985); *Kammersell v. Kammersell,* 792 P.2d 496, 499 (Utah Ct. App. 1990); *McEvily v. McEvily,* 437 A.2d 1110, 1111 (Vt. 1981).[8] Our holding is of course consistent with that conclusion and complies with our obligation to construe RURESA so as to make uniform the laws of those states that have enacted it. Section 52.10(41), STATS., 1983-84.

Thus, because the Wisconsin judgment and the Pennsylvania order ran concurrently, arrearages accumulated under the Wisconsin judgment. William received credit in Wisconsin for the amount he paid pursuant to the Pennsylvania order. RURESA § 31; § 52.10(31), STATS., 1983-84.

### III.   Equitable Estoppel

Citing *Harms v. Harms,* 174 Wis. 2d 780, 785, 498 N.W.2d 229, 231 (1993), William argues that the State is estopped from attempting to collect arrearages that accumulated under the Wisconsin judgment while the Pennsylvania order was in effect.[9] We disagree.

To prevail on his estoppel claim, William must first show that the State induced him to rely on the

---

[8] Contra *Ibach v. Ibach,* 600 P.2d 1370 (Ariz. 1979) (where ex-husband moved responding court to reduce support and responding court ordered him to pay less than that ordered in prior order, it "obviously" intended to modify prior order even though it did not specifically state that it intended to do so).

[9] William argues estoppel for the first time in his reply brief, *Harms* having been decided after he filed his brief in chief.

Pennsylvania order to his detriment. *Harms*, 174 Wis. 2d at 785, 498 N.W.2d at 231.[10]

In *Harms*, the divorce judgment prohibited the custodial mother from moving the children from Wisconsin without a court order or written agreement of the parties. After she moved the children out of state without an order or agreement, she notified their father that she no longer expected him to pay child support. Her actions induced him to quit paying. The *Harms* court held that the mother was equitably estopped from claiming support arrearages accumulating thereafter from the father. *Harms*, 174 Wis. 2d at 784-85, 498 N.W.2d at 231. .

Here, the RURESA petition asked the Pennsylvania court to order reasonable support—which Kathryn averred was "$100 per week [the amount ordered by the Wisconsin judgment], plus an additional amount toward arrears." The Pennsylvania court ordered William to pay an amount less than that requested. William claims the Pennsylvania order "obviously.implied" that he would not be in contempt in any state if he complied with it. He also asserts that Wisconsin's requesting the Pennsylvania court to order reasonable support, failing to object when that court ordered less support than the Wisconsin judgment,[11] and then doing nothing for several years until it inter-

---

[10] Because the State is a governmental entity, William must also show that any injustice that might be caused by not applying estoppel would outweigh the public interest that would be protected by applying estoppel. *State v. City of Green Bay*, 96 Wis. 2d 195, 210, 291 N.W.2d 508, 515 (1980).

[11] William also places significance on the recitation in the Pennsylvania order that it is "being entered by signed agreement of the parties." However, it also states "Reciprocal Action, signature of plaintiff not required," and "the agreement," which

cepted his income tax refund, induced his belief that the Pennsylvania order represented the full extent of his support duties while in effect.

■

William's estoppel claim fails. He has not shown that Wisconsin induced him to rely on the Pennsylvania order as stating his sole support obligation. Asking Pennsylvania to order reasonable support, a remedy available under RURESA, does not imply that the State or Kathryn intended to forego any of their non-RURESA remedies, such as enforcing the Wisconsin judgment. Section 52.10(3), STATS., 1983-84. Contrary to William's claim that Wisconsin took no action for several years after the Pennsylvania court entered its order in 1986, Wisconsin intercepted his income tax refund in July 1987.[12]

## IV. Conclusion

We conclude that the circuit court properly applied § 52.10(31), STATS., 1983-84, (RURESA § 31), when it found William in contempt for failing to comply with the support ordered in the Wisconsin judgment, notwithstanding his compliance with the Pennsylvania order.

We deny Kathryn's motion for costs and attorney's fees under RULE 809.25(3), STATS., the frivolous cost rule. William's appeal had a reasonable basis in law and was supported by a good faith argument for an extension, modification, or reversal of existing law.

---

appears on the same page as the order, does not contain Kathryn's signature.

[12] In his trial brief, William acknowledged that Wisconsin intercepted his income tax refunds in July 1987 and July 1990.