IN RE the MARRIAGE OF:

Marla J. HUBANKS, Petitioner-Respondent,

v.

Andrew L. HUBANKS, Respondent-Appellant.

Court of Appeals

*No. 96–0699. Submitted on briefs August 12, 1996.—Decided September 5, 1996.*

(Also reported in 555 N.W.2d 647.)

For the respondent-appellant the cause was submitted on the briefs of *Stephen R. Buggs* of *Karrmann, Buggs & Baxter* of Platteville.

For the petitioner-respondent the cause was submitted on the brief of *Mark A. Peterson* of *Peterson, Antoine & Peterson* of Prairie Du Chien.

Before Eich, C.J., Roggensack and Deininger, JJ.

ROGGENSACK, J. Andrew Hubanks (Andrew) appeals from an order of the circuit court of Crawford County, holding him in contempt of court for failing to pay $6,355.13 in past due child support and establishing $80/month as the payments needed to cure his contempt. He contends that a 1989 Iowa order retroactively reduced his support and determined that he had fulfilled his child support obligation. He also contends § 769.205, STATS., divests the Crawford County Circuit Court of jurisdiction. We conclude that

the 1989 Iowa order did not retroactively reduce Andrew's support obligation owed in Wisconsin and that § 769.205 did not prevent Crawford County Circuit Court from entering the order appealed from. We therefore affirm.

## BACKGROUND

Marla Hubanks (Marla) and Andrew were divorced in Crawford County, Wisconsin, on June 14, 1974. The judgment of divorce ordered that Andrew pay $60 every two weeks to Marla as child support for Renee, the minor child of the parties. Andrew defaulted on support payments immediately. On June 27, 1974, Marla assigned her support rights to Crawford County in exchange for receiving Aid to Families with Dependent Children (AFDC) payments.

In 1976, Crawford County brought a support enforcement proceeding in Delaware County, Iowa, where Andrew was then residing. On August 6, 1976, Iowa Judge L. John Degnan entered a second child support order (the 1976 Iowa order), which required Andrew to pay $50 per month as support, commencing August 20, 1976. The 1976 Iowa order did not mention the Wisconsin divorce judgment or assert that it was modifying Andrew's support obligation owed in Wisconsin. Andrew generally met his support obligation under the 1976 Iowa order, with some help from intercepts of his income tax returns.

On June 9, 1984, Renee turned eighteen and AFDC payments terminated. In 1989, Crawford County once again brought an enforcement proceeding in Delaware County, Iowa, to collect delinquent child support. On June 23, 1989, Iowa Judge Robert E. Mahn entered an order (the 1989 Iowa order), which stated, "[T]he Respondent has met his child support obligation

in full. This case is dismissed with regard to the issue of child support." The 1989 Iowa order was based on the equitable doctrine of laches. It was not based on any provision in either Iowa's Uniform Support of Dependents Act (USDA) or Wisconsin's version of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA).

On August 7, 1995, Crawford County brought an action in Crawford County, Wisconsin, to compel payments from Andrew on the support obligation owed under the Wisconsin divorce judgment. Crawford County's Order to Show Cause alleged that $6,355.13 was still due in child support under the divorce judgment, after crediting all payments made pursuant to the 1976 Iowa order. Andrew did not contest the amount alleged.

On March 13, 1996, the circuit court for Crawford County entered an order (final order) establishing arrearages at $6,355.13, ordering Andrew to pay $80 per month on the arrearage and staying enforcement of the judgment pending appeal. Andrew appeals the final order and bases his claim of error on the contention that the 1989 Iowa order had a retroactive effect on his Wisconsin support obligation accrued prior to the date of that order, due to the effect of ch. 769, STATS., and an Iowa law "substantially similar to Chapter 769." He also contends the Crawford County Circuit Court lacked subject matter jurisdiction over the issue of child support, citing the provisions of § 769.205(1), STATS.; and therefore, it was without power to find he had not met his obligation under the Wisconsin divorce judgment.

## DISCUSSION

**Scope of Review.**

This case involves statutory construction of Wisconsin and Iowa law, which presents questions of law on which this court does not defer to the trial court. *Robinson v. Kunach*, 76 Wis. 2d 436, 446, 251 N.W.2d 449, 453 (1977). There are no disputes about the facts of this case. Rather, the dispute centers on the application of statutes to undisputed facts. This also involves a question of law, which this court decides independently. *Swatek v. County of Dane*, 192 Wis. 2d 47, 57, 531 N.W.2d 45, 49 (1995); *Horch v. Ponik*, 132 Wis. 2d 373, 378, 392 N.W.2d 123, 125 (Ct. App. 1986).

**Effect of the Support Orders.**

RURESA is a uniform act which was in effect in 1976 and 1989, in Wisconsin.[1] The purposes of RURESA are "to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." RURESA § 1 (1968); *Kranz v. Kranz*, 189 Wis. 2d 370, 376, 525 N.W.2d 777, 780 (Ct. App. 1994). On April 30, 1994, the Wisconsin legislature repealed § 767.65, STATS., the section containing the RURESA provisions, and ch. 769, STATS., the Uniform Interstate Family Support Act (UIFSA) became effective. 1993 Wis. Act 326, §§ 13-14. Iowa revised USDA in 1993 too, but it did not enact UIFSA. Kathleen A. Burdette, *Making Parents Pay:*

---

[1] In 1976 and 1989, Iowa had in place § 242A of the Iowa Code (USDA), which is similar to RURESA in some places, but lacks reciprocity in others.

*Interstate Child Support Enforcement After United States v. Lopez*, 144 U. Pa. L. Rev. 1469, 1485, n.128 (1996).

On August 6, 1976, when the 1976 Iowa order was entered, IOWA CODE § 252A (1975), was effective. It specifically provided that the 1976 Iowa order could not change the Wisconsin divorce judgment in regard to a support obligation.

> Any order of support issued by a court of the state acting as a responding state *shall not supersede any previous order of support* issued in a divorce or separate maintenance action, but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both.

Section 252A.6(15), IOWA CODE (1975) (emphasis added).

■ The corresponding RURESA provision in Wisconsin was then contained in § 52.10(31), STATS., 1975 which stated in relevant part:

> A support order made by a court of this state . . . is not nullified by a support order made by a court . . . of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.

*Id.* The phrase "unless otherwise specifically provided by the court" in RURESA is ambiguous, as it could be interpreted as the court of this state (Wisconsin) or the

court of the responding state (e.g., Iowa). However, it is not necessary for us to construe that phrase, because the 1976 Iowa order did not even mention the support due under another order. Therefore, we hold that the 1976 Iowa order was a concurrent support order, which operated during the same period of time as did the Wisconsin divorce judgment. *Kranz v. Kranz*, 189 Wis. 2d at 377-78, 525 N.W.2d at 780.

The 1989 Iowa order is the central focus of Andrew's claim of error. In order to analyze his contention that it retroactively cancelled Andrew's support obligation in Wisconsin, we first examine the 1989 Iowa order in regard to its effect on Andrew's support obligation in Wisconsin in 1989, when it was issued. We will then analyze its effect on Andrew's support obligation in Wisconsin in 1995, when both the Wisconsin and the Iowa statutes providing for "uniform" enforcement of support obligations had changed.

In 1989 when Crawford County petitioned Iowa to enforce the 1974 divorce judgment for a second time, Wisconsin had renumbered its RURESA provision from § 52.10(31), STATS., 1975 to § 767.65(31), STATS., 1989-90. However, the wording of the statute had not changed. Additionally, the section of the Iowa Code addressing enforcement orders remained in the same form it had been in in 1976. Section 252A.6(15), IOWA CODE (1989). Furthermore, in 1989, Iowa common law had firmly established that Iowa courts had no authority to expunge arrearages in support. *Mills v. Mills*, 441 N.W.2d 416, 418 (Iowa Ct. App. 1989) (citing *Gillian v. Gillian*, 258 N.W.2d 155 (Iowa 1977)); *Shepard v. Shepard*, 429 N.W.2d 145, 146 (Iowa 1988); *Delbridge v. Sears*, 160 N.W. 218, 222 (Iowa 1916).

The 1989 Iowa order began by stating that the court had subject matter jurisdiction because of Iowa's USDA: "It is clear that this court has jurisdiction of this matter under IOWA CODE § 252A.4." And the court acknowledged that the 1976 Iowa order, with which it found Andrew in compliance, "did not supersede the previous order of support issued in the Crawford County divorce case . . . ." We agree with that determination.

The court then began an analysis of the equitable doctrine of laches, reviewing Iowa cases pertaining to that legal theory. However, the court did not mention any case law or statutes which it believed gave it the authority to give the 1976 Iowa order retroactive effect or to retroactively revise[2] Andrew's support obligation, under laches or any other theory. Notwithstanding those obstacles, the 1989 Iowa order purported to establish that Andrew had no further support obligation.

Under 1989 Iowa statutory and common law, the 1989 Iowa order exceeded the scope of the court's authority and would have been subject to challenge in Iowa. Section 252A.6(15), IOWA CODE (1989); *Mills*, 441 N.W.2d at 418.

In Wisconsin in 1989, the effect of the 1989 Iowa order initially would have turned on whether the Iowa court was a "court . . . of any other state as defined in a substantially similar reciprocal law" as required by § 767.65(2), STATS., 1989-90. Put another way, the effect of the 1989 Iowa order in Wisconsin would depend on whether Iowa's USDA allowed a Wisconsin court to retroactively modify support initially

---

[2] Because Renee had already turned 18, any order modifying support at that time would have affected only past due support.

established in Iowa, if the enforcement action had been brought in Wisconsin.

■

The answer to this question is "no." The Iowa Code then in effect addresses this question for 1989. It states: "Any order of support issued by a court of the state acting as a responding state shall not supersede any previous order of support issued in a divorce or separate maintenance action . . . ." Section 252A.6(15), IOWA CODE (1989). It is also consistent with the common law of the State of Iowa for delinquent support, which proscribes Iowa courts from retroactively modifying support orders issued by Iowa courts. Because Iowa's enforcement provisions did not allow Wisconsin courts to modify Iowa support orders, any provision in Wisconsin law effective in 1989 which might be interpreted as permitting a responding court of another state to modify a Wisconsin support order is without effect because Iowa's USDA contained no substantially similar reciprocal provision to that of Wisconsin. Therefore, we hold that when the 1989 Iowa order was issued, it did not affect Andrew's support obligation in Wisconsin.

Andrew asserts "the situation in this case is covered by several provisions in Chapter 769." He then argues that in 1996 when the decision of the trial court was entered, § 769.205(1), STATS., deprived the Crawford County Circuit Court of its authority to decide the child support enforcement action. And without mentioning that ch. 769 (UIFSA) was not effective until April 30, 1994, he asserts it gave the Iowa County Court exclusive jurisdiction over the issue of child support.

Andrew's legal theory requires us to determine whether § 769.205, STATS., is to be applied prospectively to orders issued on or after April 30, 1994, or retroactively to the 1989 Iowa order. Construing a statute is a matter of determining legislative intent. *State v. Eichman*, 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). Whether the legislature intended § 769.205 to apply retroactively is a question of law. *See Chappy v. LIRC*, 136 Wis. 2d 172, 180, 401 N.W.2d 568, 571-72 (1987). This court decides questions of law without deference to the decision of the trial court. *Id.* at 180, 401 N.W.2d at 572.

As a general rule, legislation is presumed to apply prospectively unless the statute expressly states to the contrary or there is some other directive from the legislature that it is to be applied retroactively. *Id.* at 180, 401 N.W.2d at 572. The presumption against retroactive legislation is based on the characteristics of legislation and concepts of fairness. *Employers Insurance v. Smith*, 154 Wis. 2d 199, 223, 453 N.W.2d 856, 866 (1990).

The general proscriptions against retroactive legislation may not apply to statutes which are merely procedural or remedial. A procedural or remedial law establishes only the method to be used in enforcing a right, while a substantive law creates, defines or regulates rights or obligations. *Schulz v. Ystad*, 155 Wis. 2d 574, 597-98, 456 N.W.2d 312, 321 (1990).

Prior to the enactment of § 769.205, STATS., Crawford County had the right to collect a $6,355.13 arrearage and it had the right to petition the courts of

the State of Wisconsin under RURESA and other provisions, to enforce child support awards. Andrew argues § 769.205 prevents that from occurring because of the 1989 Iowa order. We cannot say that the statute is merely procedural and we can find no evidence of legislative intent, either explicit or implicit, that it was meant to be applied retroactively. Section 769.205 is prospective in its effect.

Andrew's contention that the statute robs Wisconsin courts of the power to enforce their own support orders is also unpersuasive. Section 767.01, STATS., specifically gives the circuit courts authority to do "all acts and things necessary" to enforce their own judgments. Crawford County could have filed its 1995 Order to Show Cause, pursuant to § 767.30[3] and § 767.305[4], STATS., which are but two of many statutes available to enforce support obligations. The County was the real party in interest, under § 767.075, STATS., and the assignment of support rights Marla made when she began receiving AFDC payments. The remedies available in ch. 769 are in addition to any other remedy available to a support payee. They are not substitutes for other rights of enforcement. Section 769.103, STATS.

---

[3] **Enforcement of payments ordered.** . . . (3) If the party fails to pay a payment ordered under sub. (1) . . . the court may by any appropriate remedy enforce the judgment . . . . Appropriate remedies include, but are not limited to: . . . (b) Contempt of court under ch. 785.

[4] **Enforcement; contempt proceedings.** In all cases where a party has incurred a financial obligation, and where the wage assignment proceeding under s. 767.265 is inapplicable . . . the court may . . . issue an order to show cause . . . why he or she should not be punished . . . as provided in ch. 785.

Crawford County was free to use whatever sections of the statutes it believed appropriate to enforce the judgment of the circuit court.

## CONCLUSION

We conclude that the trial court properly determined that § 769.205, STATS., does not apply to the 1989 Iowa order and that nothing in ch. 769 deprived the court of the power to hold Andrew in contempt of court for failing to comply with the 1974 divorce judgment.

*By the Court.*—Judgment affirmed.