STATE EX REL. CHAIN O'LAKES PROTECTIVE ASSOCIATION, Appellant, v. MOSES, Director, Department of Veterans' Affairs, Respondent.

*No. 143. Argued January 3, 1972.—Decided February 1, 1972.*
(Also reported in 193 N. W. 2d 708.)

For the appellant there were briefs and oral argument by *William A. Chatterton* of Madison.

For the respondent the cause was argued by *Robert B. McConnell,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. Shoemakers have been admonished to stick to their lasts. A similar entire concentration upon a single task or assignment is required on this appeal. Not only have the parties stipulated as to all material facts, but they have done so for the sole purpose of raising a single issue. That issue is:

Was the state department of veterans' affairs required to secure a sec. 30.18, Stats., permit from the department of natural resources before using or diverting water from the lakes involved for the new water treatment facility at the veterans' home at King?

*Statute.* Sec. 30.18 (3), Stats., in material part states: ". . . It is unlawful for any person to divert water for the purposes set forth in sub. (1) without a permit [from the department of natural resources] . . . ." The purposes set forth in sub. (1) are ". . . bringing back or maintaining the normal level of any navigable lake or for maintaining the normal flow of water in any navigable stream . . ." and "agriculture or irrigation." The respondent contends, and the trial court agreed, that this statute is to be read and construed as requiring a permit only if the use or diversion of water by a riparian owner falls into one of the three categories listed in sub. (1). That would be a strict construction. Appellant contends that the statute should be read as prohibiting all diversions of water for any purpose whatsoever without securing a sec. 30.18 (3) permit. That would be a very broad interpretation of the statutory language.

*Common law.* Sec. 30.18, Stats., did not create a right and requirement of permit where nothing had before existed. The established rule of the common law was that every riparian owner of stream or lakeshore property had an equal right to the use of it for all reasonable and beneficial purposes, and it was this rule that early became the law in Wisconsin.[1] The right of reasonable use of water was one of the rights assured owners adjacent to lakes and streams, others including the right to accretions, relictions, pierages and wharfages.[2] What constitutes a reasonable use, under the common-law test, is a factual determination, varying from case to case,[3] and subject to a trust doctrine concept that sees all natural resources in this state as impressed with a trust for usage and conservation as a state resource.[4] Whether viewed as a requirement of permit even when diversion is reasonable or as permitting a permit to be issued

[1] *Fox River Flour & Paper Co. v. Kelley* (1887), 70 Wis. 287, 293, 294, 35 N. W. 744, quoting *Bates v. Weymouth Iron Co.* (1851), 8 Cushing 548, 552. *See also:* Ellis, Beuscher, Howard & Debraal, *Water-Use Law and Administration in Wisconsin* (1970), pp. 27–29, sec. 3.07.

[2] *See: Mayer v. Grueber* (1965), 29 Wis. 2d 168, 173, 174, 138 N. W. 2d 197, stating: "In Wisconsin riparian rights vary in accordance with the nature of the body of water. . . .

". . . It is clear in Wisconsin that the mere fact that one owns property abutting a natural body of water presumptively confers certain rights."

[3] Factors to be taken into account including: ". . . the subject matter of the use, the occasion and manner of its application, its object, extent and the necessity for it, to the previous usage, and to the nature and condition of the improvements upon the stream; and so also the size of the stream, the fall of water, its volume, velocity and prospective rise and fall . . . ." *Timm v. Bear* (1871), 29 Wis. 254, 265. *See also: Water-Use Law and Administration in Wisconsin, supra,* pp. 27–29, sec. 3.07.

[4] For the basis of the Wisconsin trust doctrine in its navigable waters, *see: Muench v. Public Service Comm.* (1952), 261 Wis. 492, 515-1, 53 N. W. 2d 514, 55 N. W. 2d 40. *See also: Water-Use and Administration in Wisconsin, supra,* pp. 140–167, secs. 9.03–9.05.

where the common-law test is not met, sec. 30.18 clearly is a statute that prohibits that which would be permitted under the common law. As such it is a statute in derogation of the common law.

*Construction.* A statute that is in derogation of the common law is to be strictly construed.[5] Exactly such strict construction was given the statute before us—sec. 30.18—in the *Nekoosa-Edwards Paper Co. v. Public Service Comm. Case.*[6] (Then the statute was numbered sec. 31.14, and the state agency granting permits was the public service commission.) There the state agency was seeking to gain authority to grant irrigation water-use permits over the objection of the other riparian owners affected despite language in the statute prohibiting diversion of nonsurplus water "unless such riparians shall consent thereto."[7] The statute was found to be nonambiguous,[8] to have been designed for a particular purpose,[9] to deal with ". . . only a small part of the conflicting interests in the water resources of Wisconsin. . . ." [10] and to apply only to ". . . granting permits for the diversion of surplus water, and in the case of waters determined by it to be nonsurplus, only for agriculture and irrigation purposes when the riparian owners beneficially using such nonsurplus water have consented to such diversion. . . ." [11] As to the contention that the

---

[5] *Leach v. Leach* (1952), 261 Wis. 350, 357, 358, 52 N. W. 2d 896.

[6] (1959), 8 Wis. 2d 582, 99 N. W. 2d 821.

[7] Still in statute; *see:* sec. 30.18 (1) (b), Stats.

[8] *Nekoosa-Edwards Paper Co. v. Public Service Comm., supra,* at page 592.

[9] "The difficulty in this case is using a statute designed for a particular purpose to ascertain rights for a wholly different purpose. The primary purpose of sec. 31.14, Stats., was to provide a remedy for the subnormal lake and stream levels caused by the dry spell of the early 1930's. . . ." *Id.* at page 590.

[10] *Id.* at page 594.

[11] *Id.* at page 589.

statute went beyond the three categories listed, *i.e.*, maintenance of normal flow, agriculture or irrigation, this court in *Nekoosa-Edwards* said:

> "The construction urged by the Public Service Commission creates a . . . class of cases not found in the language of the statute. . . . No reasonable inference of legislative intent to simultaneously create a permit system for the consumptive use of water can be read into sec. 31.14 . . . ." [12]

The requirement of strict construction and the interpretation given sec. 31.14, Stats. (now sec. 30.18), in *Nekoosa-Edwards* compel the conclusion that the statute applies only to three categories of water use: Irrigation, agriculture and the bringing back or maintaining of a normal water level in stream or lake. The statute does not apply, and a permit under sec. 30.18 (3) (a) was not required, for water used or diverted by the new water supply facility at the Grand Army Home for Veterans at King. As a riparian owner, the respondent can utilize lake water as a source of supply for the water plant at the veterans' home, providing such use is a reasonable one. Other matters that might be discussed fall outside the single issue raised. Even as the shoemaker sticks to the last, we stay with the first and only question given us to answer.

*By the Court.*—Judgment affirmed.

---

[12] *Id.* at page 592.