N.E.M., by her Guardian ad Litem, Gary M. Kryshak, Plaintiff-Appellant,

Charles MEYER, and Patti Meyer, Plaintiffs,

v.

Eugene STRIGEL, and Judy Strigel, Defendants-Respondents-Petitioners,

Scott STRIGEL, Defendant.

Supreme Court

*No. 95–0755. Oral argument October 17, 1996.—Decided February 21, 1997.*

(Also reported in 559 N.W.2d 256.)

For the defendants-respondents-petitioners there were briefs by *Steven M. Anderson* and *Ruder, Ware & Michler, S.C.*, Wausau and *Robert G. Craig*, Marshfield and oral argument by *Steven M. Anderson*.

For the plaintiff-appellant there was a brief by *Leon S. Schmidt, Jr.*, and *Schmidt, Grace & Duncan*, Wisconsin Rapids and oral argument by *Leon S. Schmidt*.

¶ 1.   JON P. WILCOX, J.   This case is before the court on a petition for review filed by Eugene and Judy Strigel. The petitioners seek review of a published court of appeals decision, *N.E.M. v. Strigel*, 198 Wis. 2d 719, 543 N.W.2d 821 (Ct. App. 1995), that reversed a circuit court judgment. Wood County circuit court Judge Edward F. Zappen held that the Strigels' parental liability under Wis. Stat. § 895.035(4) (1993–94)[1] was limited to $2,500 for the 20 sexual contacts between their son, Scott, and N.E.M. The court of appeals held that pursuant to § 895.035(4), the Strigels were liable up to $2,500 for each of the 20 instances of sexual contact, or a $50,000 limit on total liability.

¶ 2.   On review, we consider two issues: (1) whether Wis. Stat. § 895.035(4) limits the Strigels' liability to $2,500 for each of the 20 sexual contacts or to $2,500 for all 20 of the sexual contacts between Scott and N.E.M.; and (2) if the Strigels' liability is limited to $2,500 for each of the 20 instances of sexual contact, whether the jury must determine individual damages for each sexual contact. We hold that the Strigels' lia-

---

[1] Unless otherwise stated, all future statutory references are to the 1993–94 volume.

4

bility under § 895.035(4) is limited to $2,500 for each of the 20 instances of sexual contact and that in this case it was not necessary for the jury to make individual damage determinations for each assault.

¶ 3. The relevant facts are not in dispute. N.E.M., a 10 year old, and her parents brought suit against Scott Strigel, a 15 year old, and his parents, Eugene and Judy Strigel. In the action, N.E.M. alleged that she had sexual contact with both Eugene and Scott Strigel. On April 29, 1994, the jury found that Eugene Strigel had not had sexual contact with N.E.M., but that Scott Strigel had. In a special verdict, the jury concluded that Scott had sexual contact with N.E.M. "20 times" and that his conduct was wanton and willful. The jury awarded N.E.M. $35,000 for past and future pain and suffering.[2] In addition, the jury

---

[2] The jury was presented with the following questions:

| | |
|---|---|
| QUESTION 3: | Did the defendant, Scott Strigel, have sexual contact with [N.E.M.]? [Answer:] Yes |
| QUESTION 4: | If you answered Question #3 "Yes", then answer this question: Was the sexual contact of [N.E.M.] by Scott Strigel a cause of injury to [N.E.M.]? [Answer:] Yes |
| QUESTION 5: | If you have answered Question #3 "Yes", then answer this question: How many times did Scott Strigel have sexual contact with [N.E.M.]? [Answer:] 20 times |
| QUESTION 6: | . . . b.) With respect to the sexual contact of [N.E.M.] by Scott Strigel, what sum of money will reasonably compensate [N.E.M.] for: 1.) Past and future pain and suffering [Answer:] $35,000 |
| QUESTION 7: | . . . b.) With respect to the sexual contact of [N.E.M.] by Scott Strigel, what sum of money will reasonably compensate [the parents of N.E.M.] for: |

awarded $10,000 in punitive damages and $8,589 for N.E.M.'s parent's out-of-pocket expenses.[3]

## I.

¶ 4. The first issue that we address is whether Wis. Stat. § 895.035(4) limits the Strigels' liability to $2,500 for each of the 20 sexual contacts between Scott and N.E.M. or to $2,500 for all of the sexual contacts. Resolution of this issue requires us to determine the meaning of "act" as used in § 895.035(4). Statutory interpretation and the application of a statute are questions of law that this court reviews *de novo*. *Wagner Mobile, Inc. v. City of Madison*, 190 Wis. 2d 585, 527 N.W.2d 301 (1995); *Braatz v. LIRC*, 174 Wis. 2d 286, 293, 496 N.W.2d 597 (1993). Accordingly, we owe no deference to the decisions of the circuit court and court of appeals. *Colby v. Columbia County*, 202 Wis. 2d 342, 349, 550 N.W.2d 124 (1996). However, we must strictly construe § 895.035(4) because it is in deroga-

|  | 1.) Out-of-pocket expenses for the treatment & care of [N.E.M.] [Answer:] $1,200 |
|  | 2.) Loss of society and companionship of their daughter, [N.E.M.] [Answer:] $7,000 |
| QUESTION 10: | If you answered "Yes" to question #4, answer this question: Was Scott Strigel's conduct willful and wanton? [Answer:] Yes |
| QUESTION 11: | If you answered the preceding question "yes", answer this question: What sum, if any, do you assess against Scott Strigel as punitive damages? [Answer:] $10,000 |

[3] The issue of whether punitive damages should be included in the calculation of the Strigels' liability under Wis. Stat. § 895.035(4) is an open question that is not before this court. The attorneys for both the Strigels and N.E.M. so indicated at oral argument.

tion of the common law. *State ex rel. Chain O'Lakes Protective Ass'n v. Moses*, 53 Wis. 2d 579, 583, 193 N.W.2d 708 (1972); *Poston v. United States Fidelity & Guar. Co.*, 107 Wis. 2d 215, 224, 320 N.W.2d 9 (Ct. App. 1982).

¶ 5. The purpose of statutory interpretation is to discern the intent of the legislature. *Doe v. American Nat. Red Cross*, 176 Wis. 2d 610, 616, 500 N.W.2d 264 (1993). In determining this intent, the court must first look at the language of the statute. *Kelly Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *Id.*

¶ 6. Accordingly, we first examine the language of Wis. Stat. § 895.035(4). Section 895.035(4) states in relevant part:

> Except for recovery for retail theft under s. 943.51, the maximum recovery from any parent or parents may not exceed $2,500 for damages resulting from *any one act* of a child in addition to taxable costs and disbursements and reasonable attorney fees, as determined by the court.

(Emphasis added.) Use of the word "one" before the word "act" suggests that the legislature contemplated a situation in which parents would be liable for each of a series of acts. However, without a more precise definition of act, we are unable to determine what distinguishes a series of acts from a single act.

¶ 7.   In the absence of a statutory definition, the words of a statute are construed according to their common and approved usage. *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995), quoting *State v. Gilbert*, 115 Wis. 2d 371, 377–78, 340 N.W.2d 511, 514 (1983). The court may use a dictionary to determine the common and approved usage of words in a statute. *Swatek*, 192 Wis. 2d at 61; *State v. Oak Creek*, 139 Wis. 2d 788, 795, 407 N.W.2d 901 (1987). As used in Wis. Stat. § 895.035(4), the most appropriate definition is "something done or performed." THE AMERICAN HERITAGE DICTIONARY 17 (3d ed. 1992). This definition suggests that an act is a complete course of conduct. Accordingly, from the language of the statute alone, we can presume that the legislature intended parents to be liable for each of a series of complete courses of conduct. Despite this definition the meaning of Wis. Stat. § 895.035(4) may be ambiguous.

¶ 8.   A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either of two senses. *Robinson v. Kunach*, 76 Wis. 2d 436, 444, 251 N.W.2d 449 (1977). In resolving whether § 895.035(4) is ambiguous, we consider a hypothetical situation in which a child uses two stones to consecutively break two windows. One reasonable interpretation is that the child completed one course of conduct (or committed one act) and the parents should be liable up to $2,500 for the broken windows. Another reasonable interpretation is that each time the child threw a stone and broke a window, he completed a course of conduct (or committed a separate act), thus subjecting the parents to liability up to $5,000. The language of the statute alone does not indicate which

8

interpretation the legislature intended; thus, the statute is ambiguous.

¶ 9.    When the statutory language is found to be ambiguous this court examines the scope, history, context, subject matter, and object of the statute to discern the intent of the legislature. *Swatek*, 192 Wis. 2d at 58. The parental liability statute[4] was enacted in response to growing concern over juvenile vandalism and the perception that juvenile vandalism was the result of negligent supervision by parents.[5] The goal of the

---

[4] The predecessor of Wis. Stat. § 895.035 was Wis. Stat. § 331.047 (1957). In 1963, Section 331.047 was renumbered to § 895.035. Section 331.047, which was introduced by Assemblyman Earle Fricker, made similar use of the word act:

> (1)   The parent or parents having legal custody of an unemancipated minor child, in any circumstances where he or they may not be otherwise liable under the common law, may nevertheless for cause shown and in the discretion of the court be held liable for damages to property not to exceed $300, in addition to taxable costs and disbursements directly attributable to any wilful, malicious or wanton act of the child.
>
> (2)   Maximum recovery from any parent or parents of any child may not exceed the limitation provided in sub. (1) for *any one wilful, malicious or wanton act* of such child and if 2 or more children of the same parent or parents having legal custody commit the same act the recovery may not exceed in the aggregate $300, in addition to taxable costs and disbursements.

[5] *See* REPORT OF THE CHILD WELFARE COMMITTEE TO THE WISCONSIN LEGISLATIVE COUNCIL, RECOMMENDATIONS RELATING TO SERVICES FOR DELINQUENT CHILDREN, at 3 (December 29, 1954) ("Many persons appearing before the committee were concerned about a great increase in the amount of vandalism committed by children. . . .A law making parents liable for the amount of damage done by their child was recommended by the Child Welfare Committee as a possible means of curbing the amount of vandalism committed. It was alleged that making a parent

parental liability law was to impose a certain degree of financial responsibility on parents for the acts of their children. *See First Bank Southeast, N.A. v. Bentkowski,* 138 Wis. 2d 283, 289, 405 N.W.2d 764 (Ct. App. 1987). Accordingly, we must define act consistent with this statutory purpose.

¶ 10.  We must also define the word act in such a way as to avoid absurd or unreasonable results. *Swatek,* 192 Wis. 2d at 58. We believe that it is not possible to set forth an exact definition that would render a result both consistent with the statute's purpose and reasonable in all cases. This can only be achieved by considering the surrounding circumstances of each case. In determining what constitutes a complete course of conduct, and, thus, what distinguishes one act from multiple acts we find three factors of particular importance: (1) whether a sufficient period of time separates the conduct, (2) whether the conduct occurred at different locations, and (3) whether

monetarily responsible for the damage done by his child would cause the parent to take a greater interest in the activities of his child and to see that the child does not engage in destructive acts."); *Vandalism Cost Bill Sent Back,* Wis. St. J., March 1, 1957, § 1, at 4 ("Assemblyman Earle W. Fricker (D [sic]-Milwaukee) [the parental liability bill's] author, told the house the bill aimed to 'hit parents in the pocketbook' to force tighter disciplining of children."); *Bill Making Parents Liable for Vandalism Gets First Okay,* Wis. St. J., March 14, 1957, § 2, at 9 (" 'Any parents who have children have a duty to properly rear them.' [Fricker] said."); Jack Harned, *Student Group Backs Liability on Vandalism,* Wis. St. J., March 28, 1957, § 1, at 4. (" 'The youth of today needs a firm hand on the part of their parents.' Fricker said.")

there is a distinct difference in the nature of the conduct.[6]

¶ 11.   In this case, we find that 20 acts occurred because the instances of sexual contact between Scott and N.E.M. were separated by a sufficient period of time. If, however, the 20 sexual contacts had occurred within an hour we might have a situation in which the contacts could be characterized as one act. This would depend on surrounding circumstances such as the locations where the conduct occurred. Additionally, if there was a distinct difference in the nature of the acts they could not be characterized as one act. In this case, where the conduct in question consisted exclusively of sexual contact, there can be no distinct difference. However, if Scott had both sexually assaulted N.E.M. and vandalized her parents property, the distinct difference in the nature of these two actions would warrant finding that there were two acts and subjecting Scott's parents to liability up to $2,500 for the sexual assault and $2,500 for the vandalism.[7]

---

[6] We decline to adopt a standard for distinguishing one act from multiple acts that is analogous to the criminal standard for determining whether acts are sufficiently different for purposes of bringing multiple charges. *See Harrell v. State*, 88 Wis. 2d 546, 572–74, 277 N.W.2d 462 (Ct. App. 1979).

[7] A consideration of the surrounding circumstances, with particular regard to the three factors set forth, has a similar application to the window hypothetical we used to demonstrate that Wis. Stat. § 895.035(4) is ambiguous. The parents of the vandal who consecutively threw two rocks and broke two windows would be liable up to a maximum of $2,500. The breaking of the two windows in this manner would be one act for purposes of § 895.035(4). However, if the child had broken one window on one day and the other window on the following day, the parents would be liable up to $2,500 for each of the acts that caused each broken window. Similarly, if the child broke one neighbor's win-

¶ 12. Accordingly, we conclude that it is consistent with the legislature's intent to hold the Strigels liable up to $2,500 for each of the 20 sexual contacts between Scott and N.E.M.

## II.

¶ 13. The second issue that we address is whether it was necessary for the jury to make individual damage determinations for each sexual contact. This is also a question of statutory interpretation that this court reviews *de novo. Wagner Mobile*, 190 Wis. 2d 585; *Braatz*, 174 Wis. 2d at 293.

¶ 14. The Strigels argue that a new trial is necessary so that damages can be determined for each of the sexual contacts. N.E.M. contends that a new trial is not necessary because it is impossible to attribute specific amounts of damage to each act. We hold that in this case the jury need not determine damages for each of the sexual contacts.

¶ 15. In other cases where the damages caused by each act are distinct, the jury should make separate damage determinations for each act. However, in cases involving improper sexual contact, where the damages are primarily psychological and emotional, the jury need not make individual damage determinations for each act. To require a jury determination of individual damages for each instance of sexual contact would add

dow, then walked across the street and broke another neighbors window, we would have two acts. Additionally, if the child had broken the neighbor's window and then assaulted the neighbor, the parents would be liable up to $2,500 for the broken window and up to $2,500 for damages caused by the assault.

unnecessary complexity to an already difficult question. Accordingly, we hold that the jury determination of damages in this case was sufficient.

*By the Court.*—The decision of the court of appeals is affirmed.

ANN WALSH BRADLEY, J., did not participate.