Leon M. REYES, Plaintiff-Respondent-Petitioner,

v.

GREATWAY INSURANCE COMPANY, a domestic insurance corporation, Defendant-Appellant,

Aaron S. ROTHERING, Defendant-Co-Appellant,

Cheryl L. ROTHERING, State Farm Fire & Casualty Company, a foreign insurance corporation, Farm Mutual Automobile Insurance Company, a foreign insurance corporation, and Wisconsin Department of Health and Social Services, Defendants.

Supreme Court

*No. 97–1587. Oral argument March 2, 1999.—Decided July 1, 1999.*

(Also reported in 597 N.W.2d 687.)

357

For the plaintiff-respondent-petitioner there were briefs by *Chris G. Halverson* and *Schoone, Fortune, Leuck, Kelly & Pitts, S.C.*, Racine and oral argument by *Timothy S. Knurr*.

For the defendant-appellant there was a brief by *Arthur P. Simpson* and *Simpson & Deardorff*, Milwaukee and oral argument by *Arthur P. Simpson*.

¶ 1. DAVID T. PROSSER, J. Cheryl Rothering (Cheryl) sponsored her minor son Aaron when he applied for his driver's license. A year or so later, while driving his car, Aaron fired a shotgun in the direction of Leon Reyes (Reyes), hitting Reyes in the face, neck, left hand, right shoulder, and ribs, and causing permanent blindness in his left eye. The issue presented in this case is whether Cheryl Rothering is liable under Wis. Stat. § 343.15(2)(b) (1993–94)[1] for the personal injuries to Reyes caused by her 17-year-old son shooting the victim when he was operating a motor vehicle upon a highway. The court of appeals reversed the ruling of the circuit court on this issue and held that Cheryl Rothering was not liable under the Wisconsin sponsorship statute.[2] We affirm.

---

[1] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

[2] *Reyes v. Greatway Ins. Co.*, 220 Wis. 2d 285, 582 N.W.2d 480 (Ct. App. 1998).

## FACTS

¶ 2. The principal events in this case occurred October 6, 1993, on Prospect Street in Racine. Aaron Rothering (Aaron), 17, and his friend Marlon Jamison (Jamison) had been together most of the day, beginning in the afternoon. They had visited a friend, played video games, "shot some guns in the back yard," consumed malt liquor, and driven around town in Aaron's 1988 Nissan automobile purchased for him by his mother, Cheryl. In the evening, Aaron and Jamison drove around with two shotguns in the trunk of the car. They spotted a group of young people congregating on Prospect Street. They passed the group several times in the belief that they had identified members of a rival gang. The two stopped the car some distance away so that they could retrieve their shotguns from the trunk. Then, about 11:15 p.m., with Aaron driving the car, the two made their way back to Prospect Street with the headlights off.

¶ 3. Leon Reyes was among the group standing on the passenger side of the car when Aaron and Jamison opened fire. Three shots were fired, including two from Aaron, at point blank range. Reyes was hit and lay seriously wounded as the Rothering car sped away.

¶ 4. Eventually, Aaron Rothering pled guilty as a party to the crime of First Degree Reckless Injury[3] and six other felony charges. He was sentenced to 27 years in prison for his role in the crime.[4]

---

[3] Wis. Stat. § 940.23(1).

[4] Marlon Jamison received a lengthy prison sentence for his part in the shooting. *Reyes*, 220 Wis. 2d at 292 n.1.

## PROCEDURAL HISTORY

¶ 5. Reyes suffered numerous injuries, including total loss of vision in his left eye. On April 18, 1995, he filed suit against Aaron Rothering, Cheryl Rothering, three insurance companies (Greatway Insurance Company, State Farm Fire & Casualty Company, and Farm Mutual Automobile Insurance Company), and the Wisconsin Department of Health and Social Services. Several of his claims were settled or dismissed.[5] This case concerns Cheryl's alleged imputed liability under the Wisconsin sponsorship statute. Wis. Stat. § 343.15(2)(b).

¶ 6. Greatway Insurance Company (Greatway) issued a policy to Aaron. Reyes asserted that the Greatway policy covered both Aaron and his mother as insured persons and that Greatway was responsible for covering Cheryl's liability if her son's "wilful misconduct" when operating a motor vehicle upon the highway was imputed to her under the Wisconsin sponsorship statute.

¶ 7. Greatway moved for summary judgment on four grounds. First, Greatway claimed that using a

---

[5] State Farm Fire & Casualty Company, State Farm Mutual Automobile Insurance Company, and Cheryl Rothering entered into a pretrial settlement agreement and were dismissed from the action. In the Release and Settlement Agreement, the parties agreed that Reyes' dismissal of the claims against Cheryl, State Farm Fire & Casualty Company, and State Farm Mutual Automobile Insurance Company would not compromise Reyes' right to proceed against Greatway and/or Aaron to the extent that Cheryl may have had liability insurance coverage under the Greatway policy issued to Aaron.

The Wisconsin Department of Health & Social Services determined that it was not subrogated to the rights of Reyes, so that the department was dismissed from the action.

vehicle in a drive-by shooting was not a "use" of the vehicle under the policy. Second, coverage was excluded because the drive-by shooting was an "intentional act by an insured person under the policy." Third, sound public policy prevented finding coverage under the policy. Fourth, Cheryl was not "an insured person" under the policy.

¶ 8. The circuit court of Racine County, Dennis J. Flynn, Judge, denied Greatway's motion. It held that the policy was not ambiguous so that it had to be enforced by the court. Judge Flynn then made several findings about the insurance policy coverage. First, Judge Flynn found that Aaron was "using" the car that was insured by Greatway. Second, he found that there were issues of material fact as to Aaron's intent in shooting. Third, he found that Cheryl was an insured under the policy, the sponsorship statute, and the omnibus statute.[6] Fourth, he determined that the intentional acts exclusion in the policy did not apply to claims against Cheryl based on her sponsorship of Aaron. Fifth, he held that Wisconsin's omnibus statute required the policy to insure Cheryl for Aaron's use of the car. Finally, he ruled that Cheryl and Aaron were members of the same household, though the facts were in dispute. Based on these findings, Judge Flynn concluded that the Greatway policy covered Cheryl for her liability to Reyes.

¶ 9. Reyes moved for summary judgment on the issue of Cheryl's liability under the sponsorship statute. Judge Flynn denied his motion, finding an issue of

---

[6] Wisconsin Stat. § 632.32(3)(b), states: "Coverage extends to any person legally responsible for the use of the motor vehicle."

fact as to whether Cheryl had canceled her sponsorship.[7]

¶ 10. At this point, the case was assigned to Circuit Judge Stephen A. Simanek as a result of judicial rotation. Cheryl moved to be dismissed from the case pursuant to the Release and Settlement Agreement. Judge Simanek dismissed Cheryl, leaving Aaron and Greatway as the remaining defendants. The order for dismissal stated that Greatway remained only to the extent of liability coverage afforded to Cheryl for the allegations against Cheryl and Greatway.

¶ 11. Thereupon, Greatway moved for reconsideration of Judge Flynn's order denying Greatway's summary judgment motion. Judge Simanek denied the motion without stating any reasons and the case was tried before a jury.

¶ 12. The jury found that Aaron had committed an intentional tort and awarded Reyes approximately $450,000 plus costs.[8] From this amount Greatway was ordered to pay $25,000, plus interest and costs, a total of $34,432.26, for Cheryl's imputed liability in the shooting.

¶ 13. Greatway filed motions after verdict seeking several orders dismissing the claims against Greatway. Among other things, it reasserted that

---

[7] The court of appeals correctly recognized that "Implicit in the trial court's finding is the assumption that the sponsorship statute imposed liability on Cheryl for Aaron's conduct." *Reyes*, 220 Wis. 2d at 292–93 n.3.

[8] The jury unanimously determined that Reyes was entitled to damages in the following amounts: $50,000 for future medical expenses; $250,000 for pain and suffering (past and future); and $100,000 as punitive damages. Further, the court found that Reyes was entitled to $48,757.81 to cover past medical expenses.

363

Aaron's conduct was not "operating a motor vehicle upon the highways" under the sponsorship statute. Judge Simanek denied these motions and entered judgment in favor of Reyes. Judge Simanek stated that he did not want to review the rulings that his predecessor had made. In view of the rotation system used in Racine County, Judge Simanek believed that if the judges were to second guess the preliminary rulings of preceding judges, every ruling would continually be reconsidered.

¶ 14. Greatway appealed. In an opinion by Judge Richard S. Brown, the court of appeals disagreed with both circuit judges and reversed, finding no liability for Cheryl Rothering under the sponsorship statute for the drive-by shooting of her son. *Reyes*, 220 Wis. 2d at 298. The court of appeals stated that Aaron's liability was not premised on the operation of an automobile but on the distinct act of shooting a shotgun into a group of people, and thus the conduct fell outside the ambit of the sponsorship statute and liability was not imputed to Cheryl. *Id.*

¶ 15. We accepted Reyes' petition for review to determine whether a minor's discharge of a gun toward a group of pedestrians "when operating a motor vehicle" triggers parental liability under Wis. Stat. § 343.15(2)(b).

## ANALYSIS

■

¶ 16. This case involves a question of statutory interpretation. We are called upon to interpret the purpose and scope of Wis. Stat. § 343.15, the Wisconsin sponsorship statute, to determine whether it reaches a minor operator's drive-by shooting. Statutory interpretation and the application of a set of facts to the statute

are both questions of law this court reviews *de novo.* *State v. Bodoh,* 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999); *Manor v. Hanson,* 123 Wis. 2d 524, 533, 368 N.W.2d 41, 45 (1985).

¶ 17. The purpose of statutory interpretation is to discern the intent of the legislature. *Doe v. American Nat. Red Cross,* 176 Wis. 2d 610, 616, 500 N.W.2d 264 (1993). To determine this intent, the court must first look to the plain language of the statute. *Kelley Co., Inc. v. Marquardt,* 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *Id.* If the language of the statute does not clearly and unambiguously set forth the legislative intent, the court will resort to judicial construction. *Id.* at 247–48. Where one of several interpretations is possible, the court must ascertain the legislative intent from the language of the statute in relation to a number of extrinsic factors including the legislative object intended to be accomplished. *Kelly Co.,* 172 Wis. 2d at 248; *Terry v. Mangin Ins. Agency,* 105 Wis. 2d 575, 584, 314 N.W.2d 349 (1982).

¶ 18. A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either of two senses. *Kryshak v. Strigel,* 208 Wis. 2d 1, 8, 559 N.W.2d 256 (1997); *Robinson v. Kunach,* 76 Wis. 2d 436, 444, 251 N.W.2d 449 (1977). Depending on the facts of a case, the same statute may be found ambiguous in one setting and unambiguous in another. *Sauer v. Reliance Ins. Co.,* 152 Wis. 2d 234, 241, 448 N.W.2d 256 (Ct. App. 1989); *Brandt v. LIRC,* 160 Wis. 2d 353, 368, 466 N.W.2d 673 (Ct. App. 1991).

¶ 19. Wisconsin Stat. § 343.15(2)(b) is ambiguous in relation to the facts of this case. Section 343.15(2)(b) reads as follows:

> Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where both have custody and either parent signed as sponsor, otherwise, it is imputed to the adult sponsor who signed the application for such person's license. The parents or the adult sponsor is jointly and severally liable with such operator for any damages caused by such negligent or wilful misconduct.

In short, a parent is liable for a minor child's "negligence or wilful misconduct. . .when operating a motor vehicle."

¶ 20. In oral argument before this court, counsel for both parties argued that the statute was not ambiguous. We disagree, with respect to these facts.

¶ 21. The operative phrase is "when operating a motor vehicle." This phrase may be interpreted to apply only to the operation of a motor vehicle, or it may be interpreted to apply to conduct that occurs during the operation of a motor vehicle. One is a narrow interpretation; the other is a broad interpretation. The circuit court adopted the broad interpretation. The court of appeals settled on the narrow interpretation. A reasonably well-informed person could understand the statute in either sense. That demonstrates the ambiguity.

¶ 22. When statutory language is found to be ambiguous this court examines the scope, history, con-

text, subject matter, and object of the statute to discern the intent of the legislature. *Swatek v. County of Dane*, 192 Wis. 2d 47, 58, 531 N.W.2d 45 (1995). We must therefore look beyond the plain language of the statute.

## HISTORY OF § 343.15(2)(b)

¶ 23. Wisconsin Stat. § 343.15(2)(b) has its roots in the Uniform Motor Vehicle Operators' and Chauffeurs' License Act which was adopted by the National Conference of Commissioners on Uniform State Laws in 1926. Section 9 of the Uniform Act provided that a state motor vehicle licensing agency should "not grant the application of any minor under the age of eighteen years for an operator's license unless such application is signed by the father of the applicant" or some other sponsor. Section 22 of the Act further provided:

> SECTION 22. [When Parent, Guardian or Employer Liable for Negligence of Minor.]
> Any negligence of a minor under the age of eighteen years licensed upon application signed as provided in Section 9, *when driving any motor vehicle upon a highway*, shall be imputed to the person who shall have signed the application of such minor for said license, which person shall be jointly and severally liable, with such minor, for any damages caused by such negligence. (Emphasis supplied.)

¶ 24. Wisconsin first passed a sponsorship statute at a special session of the legislature in March of 1928. Ch. 1, 2nd Spl. S. 1928. The legislature did not adopt the Uniform Act *per se* but incorporated some of its principles. The law authorized the issuance of automobile driver's licenses to children less than sixteen but above fourteen years of age. The law permitted a minor to drive during daylight hours in an automobile

367

belonging to the minor's parent or guardian. Then it said: "The parent or guardian shall at all times be responsible for any and all damages growing out of the *negligent operation* of a motor vehicle by any such child." Wis. Stat. § 85.08(1a) (1929) (emphasis supplied).

¶ 25. The Uniform Motor Vehicle Operators' and Chauffeurs' License Act was eventually adopted by 18 states. But in 1943, the Act was withdrawn as obsolete. At its annual meeting, the National Conference said "It is apparent that conditions and safeguards relative to the automobile and its use, as well as conditions governing traffic on the highways, have changed materially since 1926." *Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Fifty-Third Annual Conference* (1943) at p. 69.

¶ 26. The other reason the Act was withdrawn was that the Bureau of Roads of the United States Department of Agriculture had revised the language of the Act and issued a new draft in its place.[9] This new code, containing many similarities to the old Act, was

_____

[9] The 1943 Handbook of the National Conference of Commissioners on Uniform State Laws refers to the activities of the Bureau of Roads on page 69. The drafting files for Assembly Bill 457, which led to the 1941 law, contain the following note: "This measure was prepared in tentative draft form before the session by C.N. Maurer of the highway safety division, Motor Vehicle Department. The draft is based on the Uniform Motor Vehicle Operators' and Chauffeurs' License Act (1939) and Uniform Motor Vehicle Safety Responsibility Act (1934) prepared and recommended by the Bureau of Roads, U.S. Department of Agriculture." The text of the pertinent section is taken from section 14(b) of this Uniform Motor Vehicle Operators' and Chauffeurs' License Act.

adopted by Wisconsin in 1941.[10] The section that is relevant to this case was taken nearly verbatim from the federal model. After the change, Wis. Stat. § 85.08(9)(b) (1941–42) read:

> Any negligence or wilful misconduct of a person under the age of 16 years *when operating a motor vehicle upon the highways* shall be imputed to the person who signed the application of such person for a permit or license, which person shall be jointly and severally liable for such operator for any damages caused by such negligent or wilful misconduct. . . . (Emphasis supplied.)

¶ 27. The operative phrase in the present statute—"when operating a motor vehicle upon the highway"—has been part of our law since 1941 and is very similar to the phrase in the original Uniform Act from 1926—"when driving any motor vehicle upon a highway."

¶ 28. This statutory history shows several things. First, Wisconsin clearly limited the imputed liability of a parent to a minor's negligent "operation of a motor vehicle" when the law was enacted in 1928. Second, when the law was changed in 1941, the legislature adopted language suggested by the federal Bureau of Roads as part of a revision of our statute. The legislature did not itself set out to alter fundamental policy. There is no evidence that the slight change in language that resulted from the revision was intended to expand the scope of the statute to cover criminal conduct incidental to the operation of a motor vehicle. Third, the language being construed was included in the statutes of other states. We have not found authority from other jurisdictions supporting the broad interpretation of the

---

[10] Ch. 206, Laws of 1941.

language suggested by Reyes. *See* David B. Sweet, Annotation, *Construction and Effect of Statutes Which Make Parent, Custodian, or Other Person Signing Minor's Application For Vehicle Operator's License Liable For Licensee's Negligence or Willful Misconduct*, 45 A.L.R.4th 87 (1986).

## PARENTAL LIABILITY AT COMMON LAW

¶ 29. At common law, parents were not liable for the torts of their children. *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 473, 329 N.W.2d 150 (1983); *Kumba v. Gilham*, 103 Wis. 312, 315, 79 N.W. 325 (1899); Prosser, *Law of Torts* (4th ed. 1971), sec. 123; 59 Am. Jur. 2d *Parent and Child* § 130 (1971).[11] This court has often said that statutes enacted in derogation of the common law should be strictly construed. *State ex rel. Chain O'Lakes P. Asso. V. Moses*, 53 Wis. 2d 579, 583, 193 N.W.2d 708 (1972); *Leach v. Leach*, 261 Wis. 350, 357, 52 N.W.2d 896 (1952).

¶ 30. When Reyes brought suit against Cheryl Rothering, he sought claims under both the sponsorship statute, Wis. Stat. § 343.15(2)(b), and Wis. Stat.

---

[11] "There is no common-law liability of a parent or other custodian of a minor for the negligence or wilful misconduct of the latter while driving a motor vehicle." L. S. Tellier, Annotation, *Construction and Effect of Statutes Which Make Parent, Custodian, or Other Person Signing Minor's Application for Vehicle Operator's License Liable for Licensee's Negligence or Wilful Misconduct*, 26 A.L.R.2d 1320, 1321 (1952). *See also* David B. Sweet, Annotation, *Construction and Effect of Statutes Which Make Parent, Custodian, or Other Person Signing Minor's Application For Vehicle Operator's License Liable For Licensee's Negligence or Willful Misconduct*, 45 A.L.R.4th 87, 96 (1986) ("At common law, parents are not generally liable for the torts of their minor children . . .").

§ 895.035, two parental liability statutes in derogation of the common law.

¶ 31. Wisconsin Stat. § 895.035(2) makes parents liable for personal injury and property damage caused by their minor children in any circumstances in which the parents or the children would not be liable at common law. This court reviewed that statute in *N.E.M. v. Strigel*, 208 Wis. 2d 1, 6–7, 559 N.W.2d 256 (1997), saying "We must strictly construe § 895.035(4) because it is in derogation of the common law."

¶ 32. We think the same principle applies to § 343.15(2)(b).[12] A statute imputing a minor's negligence or wilful misconduct to a parent should be strictly construed, not to negate any manifest purpose of the legislature in enacting the statute but rather to honor the specific purpose of the legislature in enacting the statute. Construing § 343.15(2)(b) to reach a drive-by shooting would not be a strict construction of the statute.

## LEGISLATIVE PURPOSE

¶ 33. The legislative purpose of the sponsorship statute has been discussed in a number of Wisconsin cases. From the outset in 1928, the statute has required a minor driver to secure an adult sponsor before obtaining a license. The legislature "was concerned with the hazards of negligently operated motor vehicles and with the desirability of imposing liability on a dependable adult who could pay for damages caused by a negligent minor driver." *Swanigan v. State Farm Ins. Co.*, 99 Wis. 2d 179, 192, 299 N.W.2d 234

---

[12] In *Bilsten v. Porter*, 516 P.2d 656, 657 (Col. Ct. App. 1973), the court said a similar Colorado statute was "in derogation of common law, and is therefore to be strictly construed."

(1980). To "protect the public from damage caused by the negligent operation of vehicles by youthful drivers," *Employers Mut. Fire Ins. Co. v. Haucke*, 267 Wis. 72, 75, 64 N.W.2d 426 (1954), the legislature thought it was important to look for security in persons other than the minor. *Ynocenio v. Fesko*, 114 Wis. 2d 391, 398–99, 338 N.W.2d 461 (1983).[13] Parents are generally the people in the best position to have personal knowledge of a minor's characteristics as well as the opportunity to exercise some degree of control over a minor's driving. *Mikaelian v. Woyak*, 121 Wis. 2d 581, 594–95, 360 N.W.2d 706 (Ct. App. 1984). Presumably, parents are in a position to act quickly to withdraw their sponsorship if a minor child shows signs of irresponsibility. They have an incentive to do so because the liability imputed to them is very strict, and there is no limit on the liability imposed. *Id.* at 598.

¶ 34. Wisconsin Stat. § 343.15(2)(b) has been part of the licensing portion of the motor vehicle code for seven decades. The scope of the statute has been discussed in two previous cases. In the *Haucke* case, a minor driver stole a vehicle and wrecked it while attempting to escape capture. This court was asked whether the fact that the alleged negligent acts and wilful misconduct happened during the commission of a crime absolved the sponsor from liability under the sponsorship statute. The court recognized that the action was based not on the theft of the vehicle but on the negligent operation of a vehicle which resulted in damage. *Haucke*, 267 Wis. at 74. We also stated:

---

[13] Juveniles "generally lack adequate finances to cover any potential damage they may cause." *Mikaelian v. Woyak*, 121 Wis. 2d 581, 594, 360 N.W.2d 706 (Ct. App. 1984).

There is no imputation of criminal conduct to the father in holding him liable for his son's negligence when the damage results from that negligence while the son is driving a stolen car. The statute merely imputes to the father the negligence and wilful misconduct of the minor driver. Had the legislature intended that there should be no responsibility because of criminal acts, it could have said that. Not having done so, it seems plain that the negligent acts of the minor must be imputed to the sponsor in claims arising out of such negligent acts, regardless of whether the automobile is stolen or is being operated with consent.

*Id.* at 75.

¶ 35. In *Mikaelian,* a 17-year-old minor driver and his adult brother engaged in a drag race on the highway. Both ran a stop sign and collided with another vehicle, killing an adult and child and causing severe injuries to others in the struck vehicle. Both brothers were found negligent, and since one was a minor, the minor's parents were held vicariously liable under § 343.15(2). The minor's parents challenged the sponsorship statute on constitutional grounds and filed other objections to the verdict. The court stated:

The legislature's reluctance to allow juveniles to drive is understandable. Operation of a motor vehicle is a skill involving mental discretion as well as physical dexterity. We take notice of the Wisconsin motor vehicle statistics in the past years to underline the point that juveniles generally do not possess mental discretion to the same degree as an adult and, consequently, present a greater risk on Wisconsin highways.

*Mikaelian,* 121 Wis. 2d at 594.

373

¶ 36. The author of the court of appeals decision in *Reyes*, Judge Richard S. Brown, was also the author of the opinion in *Mikaelian*. In *Reyes*, Judge Brown reconciled the two cases and set out a logical rationale for the statute. Under the sponsorship statute, if parents believe their children can shoulder the responsibility of driving sensibly, then they must assume the risk of their decision being wrong. *Reyes*, 220 Wis. 2d at 295. The parents or parent sign a legal document of sponsorship. This is the conduct upon which potential liability is predicated—the parents' voluntary conduct in allowing their children to drive. *Id.* Citing the *Haucke* case, Judge Brown noted that under the sponsorship statute, "liability does not depend on either consent of the owner or knowledge of the parents with respect to the operation of an automobile by a minor." *Id.* at 296. The father's liability in *Haucke* was "based not on the theft" of the car by his son "but on the child's negligent operation of the car." *Id.* In *Reyes*:

> Aaron's operation of the motor vehicle on the highway did not cause any damage. We are not confronted with a case in which Aaron's negligent or reckless driving injured others. Nor are we faced with a circumstance where a minor intentionally or willfully used a car as a weapon to injure another person or another person's property. Instead, Aaron's liability is predicated on his distinct act of intentionally discharging a shotgun into a group of people, thereby injuring Reyes.

> This factual distinction between the case at bar and [*Haucke*] and *Mikaelian* is important because it defines the scope of parental (or a sponsor's) liability under the sponsorship statute. . . .[U]nder the sponsorship statute, if parents allow their children

> to drive, the risk they assume is that the child's driving will cause damage, and, as a consequence, they are liable for the child's negligent or intentionally reckless driving. . . .Therefore, in [the two cases cited], the children's conduct fell within the scope of parental liability under the statute because it was their negligent or reckless operation of an automobile that caused the damage.

*Id.* at 296–97 (citation omitted).

¶ 37. The decisions in *Haucke* and *Mikaelian* are entirely consistent with a legislative purpose to protect the public from damages caused by a minor's operation of a motor vehicle. This was the problem contemplated by the legislature. This was the risk assumed by the sponsors. Construing the statute to cover damages from intentional criminal activity unrelated to driving but committed while a minor is operating a motor vehicle, goes well beyond the scope of the statute intended by the legislature.

¶ 38. Reyes points to a line of cases that arguably suggest a different result. He cites *Thompson v. State Farm Mut. Auto. Ins. Co.*, 161 Wis. 2d 450, 468 N.W.2d 436 (1991), and *Kemp v. Feltz*, 174 Wis. 2d 406, 497 N.W.2d 751 (Ct. App. 1993), two cases involving deer ·hunters who fired their weapons from motor vehicles.

¶ 39. In the *Thompson* case, a man named Yndestad owned a pickup truck. Yndestad was a hunter with a physical disability. During hunting season, he parked his truck near an open field, left his cab, and sat on the floor of the bed of the truck. When he saw deer, he fired two rifle shots, one of which traveled some 500 yards, past the deer and on to a state highway where it killed Lester Thompson. Yndestad had automobile insurance and Thompson had automobile insurance. Yndestad's insurance was not sufficient to

375

cover Thompson's damages. The issue, as defined by the court, was this: Did the accidental shooting of a passing motorist by a disabled deer hunter sitting in the bed of his pickup truck and possessing a permit under state law which authorized him to shoot or hunt from a stationary vehicle, "arise out of" the "use" of the truck, as required in the insurance policy? *Thompson*, 161 Wis. 2d at 452.

¶ 40. In *Kemp v. Feltz*, two hunters, Feltz and Hudspeth, jumped into a pickup truck to pursue several deer. They illegally fired shots from the truck at the deer who were running in a field along the highway. Kemp was in the field dressed in blaze orange. The hunters did not see him. One of their stray bullets struck Kemp. The issue was whether the automobile insurance policy for the pickup truck covered the illegal "use" of the truck which caused injury to Kemp. *Kemp*, 174 Wis. 2d at 410–11.

¶ 41. Both cases involved insurance policies. Both cases involved an adult policy holder who was either a perpetrator or a victim of tragic negligence. Neither case made any reference to Wis. Stat. § 343.15(2). Insurance contracts are broadly worded and are usually construed liberally in favor of coverage. The construction is different for statutes that are enacted in derogation of the common law. Because we construe § 343.15(2) narrowly, we find the two deer cases inapposite to the present facts.

## ABSURD RESULTS

¶ 42. Courts are obligated to construe statutes in a manner that avoids absurd results. *Peters v. Menard, Inc.*, 224 Wis. 2d 174, 189, 589 N.W.2d 395 (1999); *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 636, 547 N.W.2d 602 (1996); *Swatek*, 192 Wis. 2d at 58; *Ann*

*M.M. v. Rob S.*, 176 Wis. 2d 673, 679, 500 N.W.2d 649 (1993).

¶ 43. If we adopted Reyes' interpretation of the statute, it could lead to absurd results. If the statute were interpreted to include crimes committed "when operating a motor vehicle upon the highways"—i.e., crimes committed while a minor is operating the motor vehicle—there is almost no limit to the scope of the statute. One can think of hypotheticals involving sexual assault, kidnapping, arson, robbery, bomb threats, fraud, and disorderly conduct by car phone while a minor is operating a motor vehicle, partly because the "operating" can mean as little as sitting in the driver's seat with the engine running. For instance, a minor boy can commit a sexual assault on an underage girl in an automobile, even in a relatively public place like a drive-in movie. A lot of controlled substances are sold out of cars with the engines running, leading to unpredictable results, even death.

¶ 44. Counsel for Reyes candidly recognized that bizarre situations could fall within his interpretation of the statute. Hence, he asked us to impose a limiting construction to foreclose absurd consequences. Yet, courts begin to construe statutes only when they are ambiguous. This is opposite of counsel's contention that the statute is not ambiguous.

¶ 45. Reyes depends in his argument on a particular literal reading of the sponsorship statute. He contends that the statute imputes the wilful misconduct of a minor (such as a shooting) to parents "when [the minor is] operating a motor vehicle upon the highways." In that situation, parental liability could amount to hundreds of thousands of dollars. However, if the minor driver stopped the car, turned off the ignition, and got out of the car before shooting, then

apparently the parent would be liable under Wis. Stat. § 895.035 only—and the liability would be limited to the amount attainable in a small claims action. § 895.035(4). As public policy, this makes no sense.

## CONCLUSION

¶ 46. In sum, based on strict construction, statutory history, prior case law defining the legislative purpose of Wis. Stat. § 343.15(2), and the maxim that a court should avoid absurd results when interpreting a statute, we conclude that when a minor discharges a firearm toward a group of pedestrians while driving a motor vehicle on the highway, the minor's conduct does not fall within the terms of Wisconsin's sponsorship statute. Wisconsin's sponsorship statute was not meant to impose liability on parents for their child's participation in a drive-by shooting. Therefore, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.