250 Wis.2d 637 (2001)
2002 WI App 24
639 N.W.2d 788
ARBOR VITAE-WOODRUFF JOINT SCHOOL DISTRICT NO. 1, Plaintiff-Respondent,
v.
GULF INSURANCE COMPANY, a foreign corporation, Defendant-Appellant,
TEMPERATURE CONTROL CORPORATION, a Wisconsin corporation, Defendant.
No. 01-0993.
Court of Appeals of Wisconsin.
Submitted on briefs December 3, 2001.
Decided December 28, 2001.
*640 On behalf of the defendant-appellant, the cause was submitted on the briefs of Bruce Gillman and Boardman, Suhr, Curry & Field LLP of Madison.
On behalf of the plaintiff-respondent, the cause was submitted on the brief of Mary Sue Anderson and Ruder, Ware & Michler, a Limited Liability S.C. of Wausau.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶ 1. HOOVER, P.J.
Gulf Insurance Company appeals a judgment declaring timely the action brought against it by Arbor Vitae-Woodruff Joint School District No. 1 and allowing it to proceed. WISCONSIN STAT. § 779.14(2)[1] allows an injured party to directly sue the surety on a public works bond within a year of the "completion of work under the contract." Gulf contends that § 779.14(2), a statute of limitations, precludes the claim because it was not brought within one year of the completion of work. At issue is when work was completed under the contract. We conclude that the statute of limitations began to run on the date Temperature Control Corporation (TCC), the contractor for which Gulf is a surety, completed its work. The parties stipulated that TCC did no work on the project after December *641 16, 1998. Therefore, the district's February 7, 2000, suit was filed more than a year after TCC completed its work under the contract. We reverse the judgment and remand for the entry of judgment in favor of Gulf.

BACKGROUND
¶ 2. In 1997, the school district began construction on a new elementary school. The district entered into a written contract with TCC on June 20, 1997. TCC agreed to install the heating, venting and air-conditioning system in the new elementary school, and Gulf issued a surety bond for TCC.
¶ 3. TCC performed the work on the elementary school. It submitted its final application for payment on December 22, 1998. TCC did no work at the school after it submitted the application. On February 8, 1999, the district's architect certified that TCC completed its work and approved TCC's final payment request.
¶ 4. The district discovered problems with the heating, venting and air-conditioning system in June 1999. Gulf communicated with the district and requested documents to ascertain whether it was liable under TCC's performance bond. Gulf advised that its attorney would contact the district after it reviewed the documents, but, "In the meantime, the School District should feel free to do whatever is necessary to mitigate its damages in this matter."
¶ 5. On January 3, 2000, Gulfs attorney sent a letter to the district denying liability under the surety bond, claiming that the one-year statute of limitations under WIS. STAT. § 779.14(2) had expired. The district filed an action requesting declaratory relief on February 7, 2000. It asked the trial court to declare that the statute of limitations for claims under the surety bond *642 began to run on February 8, 1999, the date the district's architect accepted the work under the contract as complete and certified final payment to TCC.
¶ 6. The trial court granted declaratory judgment in the district's favor. It found ambiguous the phrase, "completion of work under the contract," in WIS. STAT. § 779.14(2). It then (1) looked to legislative history and (2) interpreted the contract between the parties. The court concluded that the statute of limitations began to run on February 8, 1999, when the district's architect accepted TCC's work as complete and authorized final payment. Gulf now appeals.

STANDARD OF REVIEW
[1-4]
¶ 7. The interpretation of a statute and its application to a set of facts are questions of law we review de novo. Reyes v. Greatway Ins. Co., 227 Wis. 2d 357, 364-65, 597 N.W.2d 687 (1999). "The purpose of statutory interpretation is to discern the intent of the legislature." Id. at 365. To determine intent, we look to the plain language of the statute. Id. A "statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either of two senses." Id. If the language of the statute renders legislative intent ambiguous, we resort to judicial construction. Id.

DISCUSSION
[5]
¶ 8. As indicated, WIS. STAT. § 779.14(2) allows an injured party to directly sue the surety on a public works bond within a year of the "completion of work *643 under the contract." Gulf contends that § 779.14(2) is ambiguous and that legislative intent proves that "completion of work under the contract" occurs when a contractor has completed the work described in the contract. The district argues that the words, "under the contract," refer the parties to their contract to determine when the work was completed. The district argues that the work was complete under the contract when its architect accepted the work and approves final payment to TCC. We conclude that the statute is ambiguous.
¶ 9. WISCONSIN STAT. § 779.14(2) provides no definition for its operative phrase, "completion of work under the contract." Precisely when work is completed under the contract cannot be discerned from the face of the statute. This phrase may be interpreted as the time when the contractor finishes the work it agreed to do in the contract. Or it may be interpreted as the time when the contractor's work has been accepted by the district's architect. A reasonably well-informed person could understand the statute in either sense. Thus, we deem the statute ambiguous and look beyond its words to determine its meaning.[2]
[6, 7]
¶ 10. We examine the "scope, history, context, subject matter, and object" of ambiguous statutory language to discern the legislature's intent. Reyes, 227 Wis. 2d at 366-67. Because the legislature's intent *644 cannot be discerned from the statute itself, we turn to the legislative history of WIS. STAT. § 779.14(2) to see if it clarifies the meaning of the statute. See Milwaukee Cty. v. LIRC, 113 Wis. 2d 199, 204, 335 N.W.2d 412 (Ct. App. 1983).
[8]
¶ 11. Prior to 1935, an action on a public works bond had to be commenced "within one year after the completion and acceptance of said contract." WIS. STAT. § 289.16(2) (1925) (emphasis added). In Pittman v. Lieffring, 59 Wis. 2d 52, 64, 207 N.W.2d 610 (1973), our supreme court stated, "Generally, the studied omission of a word or words in the re-enactment or revision of a statute indicates an intent to alter its meaning." In 1935, LAWS OF 1935 ch. 483, the legislature deleted the words, "and acceptance," and signaled its intent to change the statute of limitations trigger from acceptance and payment, which can arbitrarily be delayed by one party, to completion of work.[3] Because the statute originally provided that the one year ran from the "completion and acceptance of [the] contract," we conclude that the legislature intended that completion no longer be dependent on acceptance.
¶ 12. The district acknowledges that the change in the predecessor statute to WIS. STAT. § 779.14(2) is significant. However, it contends that, by deleting "and *645 acceptance," the legislature intended to defer to the contracting parties to decide when work is complete. We disagree. In In re Liquidation of Wis. Surety Corp., 111 Wis. 2d 194, 200, 330 N.W.2d 768 (1983), our supreme court interpreted WIS. STAT. § 779.14(1), the subsection preceding WIS. STAT. § 779.14(2), which also uses "under the contract." The court said, "`Under the contract' means that the labor or material was used or consumed on the public improvement project and within the scope of the particular prime contract which the surety company bonded." Wisconsin Surety, 111 Wis. at 200. Accordingly, "under the contract" refers to a contractor's part in a construction project or what the contractor agreed to do pursuant to the contract. See id. Therefore, we do not look to the contract between the parties to identify the point at which a contractor completed its work. We interpret the statute of limitations to determine when work was completed, independent of the parties' contract.[4]
*646 [9, 10]
¶ 13. We conclude that the WIS. STAT. § 779.14(2) statute of limitations begins to run when a contractor completes its work on a project. The work is completed when the contractor has performed all work it is responsible for under the terms of the contract. This is an issue of historical fact, and it has been stipulated to in this case. The contractor, by submitting a final application to the architect, is saying that the construction was complete at least as of the date the bill is submitted. The architect then investigates to determine whether the work was actually completed as contracted for and authorizes the final payment. This latter process follows, and is not part of, the completion of the work.

CONCLUSION
¶ 14. The parties stipulated that TCC completed its work on the school no later than December 16, 1998. At that point, the statue of limitations under WIS. STAT. § 779.14(2) began to run. The district's complaint was not filed until February 7, 2000, nearly two months after the statute of limitations expired. Section 779.14(2) precludes the district's complaint against Gulf because it was not filed within one year of TCC completing its work. We reverse the judgment and remand for entry of judgment in favor of Gulf dismissing the district's untimely claim.
By the Court.Judgment reversed and cause remanded with directions.
NOTES
[1] WISCONSIN STAT. § 779.14(2) provides in relevant part: "No later than one year after the completion of work under the contract any party in interest . . . may maintain an action . . . against the prime contractor and the sureties upon the bond for the recovery of any damages." (Emphasis added.)

All references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise noted.
[2] In Holy Family Catholic Congreg v. Stubenrauch Assocs., 136 Wis. 2d 515, 521-24, 402 N.W.2d 382 (Ct. App. 1987), this court interpreted the meaning of "substantial completion of construction" in the statute of limitations section of the builder's statute, WIS. STAT. § 893.89. Id. at 518. The statute offered no definition for "substantial completion of construction," and we concluded the statute was ambiguous and looked beyond its words to determine its meaning. Id. at 521.
[3] In Holy Family, 136 Wis. 2d at 522, we said, "Without explicit statutory direction, we cannot imply a legislative intent to empower one party to trigger the six-year limitation period by its unilateral action." We then turned to legislative intent to construe the statute and rejected a procedure by which either party could unilaterally start the statute of limitations. Id. at 522-24. "For the purposes of the statutory limit, it is the court, not the architect, who determines the date of substantial completion." Id. at 524-25.
[4] Even if we look to the contract between TCC and the district to define the completion of work, we would arrive at the same result. The definition of work unambiguously refers to the contractor's labor and services. The district argues that all the construction and services provided for in the contract must be complete. Nevertheless, the definition itself shows that when TCC completed the heating, ventilation and air-conditioning installation, it completed its work under the contract. The inspection and acceptance were part of the architect's duties under its own contract with the district. Here, the architect agreed with TCC that its work had been completed under the contract. The only reasonable conclusion one may come to is that the work was completed at the latest on December 16, 1998, the date the parties stipulated TCC did its last work on the project.