STATE of Wisconsin, Plaintiff-Respondent,

v.

David J. LENZ, Defendant-Appellant.†

Court of Appeals

*Nos. 99–0860–CR, 99–0861–CR. Submitted on briefs
September 7, 1999.—Decided September 21, 1999.*

(Also reported in 602 N.W.2d 172.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William C. Wolford*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Cane, C.J., Hoover, P.J., and Gordon Myse, Reserve Judge.

HOOVER, P.J.  David Lenz appeals two orders denying his motions to dismiss criminal nonsupport charges against him under § 948.22(2), STATS.[1] He contends that: (1) the conduct criminalized by the statute is only the failure to pay current child support; (2) even if the statute covers the failure to pay arrearages, it does not apply once the child attains the age of majority; and (3) the court erred by determining that Lenz's tax intercepts could not be considered as payments of his support obligation because they were not "voluntarily paid." Because the statute does not distinguish between current support and arrearages, and the character of the amount that Lenz was ordered to provide for support of a child is not transformed by the passage of time or by labeling it an "arrearage," we conclude that § 948.22 applies to the failure to pay arrearages, even after the child has reached majority. We also hold that tax intercepts constitute the provision of support for those months to which they are allocated. Accordingly, we affirm in part, and reverse in part.

Two separate orders obligated Lenz to pay support for his sons, Robert and Jesse. Robert was born in 1973. Lenz was ordered to pay $35 per week for Robert's support beginning in 1974. In 1980, the order to pay current support was suspended and never reinstated, but Lenz was ordered to pay $25 per week toward the arrearage of $10,540. In 1995, a Louisiana court ordered Lenz to pay $75 per month toward the arrearage in a Uniform Interstate Family Support Act

---

[1] This is an appeal from a nonfinal order. We granted leave to appeal on April 27, 1999.

proceeding.[2] *See* LA. STATS., ch. C, arts. 1301–1342 (West 1994).

Jesse was born in 1974. Lenz was ordered to pay support of $45 per month for Jesse's support beginning in 1975. By the end of 1991, Lenz owed more than $8,000 in back support. In 1992, he was ordered to pay $20 per week towards the arrearage. A Louisiana court modified the order to $100 per month in 1994. Lenz was never relieved of his obligation to pay weekly support for Jesse.

Lenz did not make direct payments on his orders in 1994, 1995 or 1996, but in April 1994, a $519.92 tax refund was intercepted and applied to his arrearages. In May 1995, a $289.59 refund was intercepted and in August 1996 a refund of an undisclosed sum was intercepted.

The State charged Lenz with six felony counts of nonsupport in two separate proceedings. One proceeding involved two counts of nonsupport of Robert during the period from January through September 1996. The other proceeding involved four counts of nonsupport of Jesse during the period from January 1994 through December 1995. At the preliminary hearings held in each case, witnesses testified that Lenz had not personally made support payments during the charged 120-day periods and that Robert and Jesse were no longer minors. The courts received evidence that tax refunds had been intercepted and applied during some of the 120-day periods.

Lenz was bound over for trial in each case.[3] Both courts rejected his contention that § 948.22, STATS.,

---

[2] Lenz had, at some point, moved from Wisconsin to Louisiana.

[3] Judge Dee Dyer bound Lenz over in connection with the nonsupport of Robert. A court commissioner bound Lenz over in

does not apply to arrearages. They also rejected Lenz's assertion that the tax refund intercepts constituted his provision of support on the grounds that the intercepted payments were not voluntarily made. Lenz filed leave to appeal which was granted and this appeal ensued.

## STANDARD OF REVIEW

The pertinent facts are not disputed on appeal. The controversy focuses on the interpretation of the criminal nonsupport statute, § 948.22, STATS. Statutory interpretation and application thereof to undisputed facts are matters of law that we review de novo. *See State v. Slaughter*, 200 Wis. 2d 190, 196, 546 N.W.2d 490, 493 (Ct. App. 1996); *see also State v. Abbott*, 207 Wis. 2d 624, 627, 558 N.W.2d 927, 928 (Ct. App. 1996). Our goal in statutory construction is to discern the intent of the legislature. *See State v. Rosenburg*, 208 Wis. 2d 191, 194, 560 N.W.2d 266, 267 (1997). To determine the legislature's intent, we first look to the statute's language. *See N.E.M. v. Strigel*, 208 Wis. 2d 1, 7, 559 N.W.2d 256, 258 (1997). If that language is unambiguous, we do not look beyond it to determine its meaning. *Id.* If, however, a statute is ambiguous, we examine the scope, history, context, subject matter and purpose of the statute in order to determine the legislature's intent. *See State ex rel. Jacobus v. State*, 208 Wis. 2d 39, 48, 559 N.W.2d 900, 903 (1997). A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in more than one way. *See id.*

---

connection with the nonsupport of Jessie, and Judge Froehlich entered a written order consistent with that ruling.

## ANALYSIS

### *Are arrearages child support?*

Lenz argues that the definition of child support in § 948.22(1)(a), STATS., as "an amount which a person is ordered to provide for support of a child," suggests that the statute's objective is to insure that children are supported. He asserts that the offense is committed when the child is not supported, and not at a later date when the parent fails to pay support arrearages previously incurred. He claims that whether one pays arrearages has no effect on the child's current welfare and therefore does not constitute a failure to provide for support of a child. Lenz concedes that he may have violated the non-support statute when he originally failed to pay current support and accumulated the arrearages, but not when he failed to pay the accumulated arrearages after his current support obligation ended.

We reject Lenz's argument for two reasons. First, the definition of child support in § 948.22(1)(a), STATS., contains no distinction between current and past support. It provides: " 'Child support' means an amount which a person is ordered to provide for support of a child by a court of competent jurisdiction in this state . . . ." Child support arrearages arise from an order to provide for support of a child. An arrearage inevitably results when one fails to provide this support and its character is not transmuted or transformed by the passage of time. It continues to be "an amount which a person is ordered to provide for support of a child . . . ." The arrearage originates from and is directly and exclusively correlative to the court-ordered obligation to pay support.

Second, a crime is committed only when an arrearage arises. The essence of the crime is failing to pay support for at least 120 days. *See* § 948.22(2), STATS. The prosecution is founded on the arrearage for that 120-day period.

Lenz nonetheless asserts that the legislature has distinguished between child support and arrearage payments. He directs our attention to § 948.22(7)(b)1, STATS., contending that this section would be unnecessary if the legislature had determined that an order for child support automatically encompassed arrearages. Section 948.22(7)(b)1 does not support his contentions. It provides:

> In addition to or instead of imposing a penalty authorized for a Class E felony . . . the court shall:
>
> . . . order the defendant to pay the amount required including any amount necessary to meet a past legal obligation for support.

This subsection provides a dispositional mandate. It does not relieve from criminal responsibility one who has outstanding arrearages after the obligation to pay current support has ended. Rather, it requires the court to order the defendant to pay past support as well as the amount due during the charged period. Its purpose is to make clear that the imposition of a criminal penalty does not relieve an obligation to pay support. During the time in question, Lenz was subject to an order to pay $75 per month for Robert and $100 per month for Jesse. He was not charged with the failure to pay his entire arrearage, which exceeded $10,000 for Robert and $8,000 for Jesse, but only his failure to pay the monthly amount during the charged period. Upon conviction, the court is required to order a defendant to pay those amounts and the entire arrearage.

535

Lenz also directs us to §§ 767.293 and 767.30, STATS., as examples of the legislative recognition that child support does not include a support arrearage. He argues that because §§ 767.293 and 767.30, STATS., speak separately of child support and child support arrearages, that support and arrearages must therefore be different. We disagree. Section 767.293 provides a procedure to establish an arrearage when the payer is required to pay a percentage of income as child support. Section 767.30 lists the remedies available to enforce payments that have been ordered. We find no support in these statutes for the proposition that an arrearage is not child support.

## *Can nonsupport be prosecuted after the child attains majority?*

Lenz alternatively contends that when the child turns eighteen it can no longer be a crime not to pay support. He asserts that because the statute speaks of providing for support of a child, the crime cannot, by definition, be committed once the child attains adulthood. He relies on the definition of "child support" in § 948.22(1)(a), STATS., and the definition of "child" in § 948.01(1) to support his arguments.[4]

Lenz's argument that the statute criminalizes only the current nonsupport of minor children is unpersuasive. The point is not the age of the child. We recognize that by the passage of time, the payments on the arrearage may no longer actually support the child.

---

[4] Section 948.01(1), STATS. defines child as:

"Child" means a person who has not attained the age of 18 years, except that for purposes of prosecuting a person who is alleged to have violated a state or federal criminal law, "child" does not include a person who has attained the age of 17 years.

This does not change the purpose and nature of the obligation that is the focus of § 948.22, STATS.: "an amount which a person is ordered to provide for support of a child . . . ." Lenz does not dispute that he was originally ordered to pay the amounts at issue for the support of his children and failed to do so. The arrearage inevitably arose from his failure to provide for that support, and, again, is directly and exclusively correlative to the court-ordered support obligation. Its character is unchanged by the passage of time, or by labeling it an arrearage.

In *Griffin v. Reeve*, 141 Wis. 2d 699, 707–08, 416 N.W.2d 612, 616 (1987), our supreme court rejected the assertion that a support order expires when the child attains majority. In *Griffin*, Reeves had outstanding child support arrearages that he claimed could not be the subject of a contempt proceeding because his child had reached the age of majority. *Id.* at 707, 416 N.W.2d at 615–16. Reeves claimed that his refusal to pay support, the act of contempt, could not continue beyond the child's majority. *Id.* The court determined that the court order does not expire until the parent complies. *Id.* at 708, 416 N.W.2d at 616. We conclude that the *Griffin* analysis applies here as well.

We are also guided by the legislature's policy concerns, identified in *Griffin* and *State v. Grayson*, 172 Wis. 2d 156, 493 N.W.2d 23 (1992). Section 948.22, STATS., permits a prosecutor to charge one felony count for each separate 120-day period that a person fails to pay child support. Child nonsupport is a pervasive problem, and the legislature has an overriding concern that parents not shirk their obligations to support their children. *Griffin*, 141 Wis. 2d at 704–05, 416 N.W.2d at 614–15. The statute is intended to deter long-term failures to provide support. *Grayson*, 172 Wis. 2d at 166,

493 N.W.2d at 28. Regardless of the child's age, prosecuting parents who have failed to meet their support obligations is consistent with this intent.

We would find Lenz's arguments more compelling if the legislature had used language it used elsewhere in defining child support under § 948.22, STATS. For example, in § 767.25(6), STATS., the legislature spoke of situations in which "the party no longer has a current obligation to pay child support . . . ." The legislature could have used that or similar language to indicate an intent to limit application of § 948.22 to a current support obligation. It did not. We presume that the legislature chooses its terms carefully and with precision to express its meaning. *See Johnson v. City of Edgerton*, 207 Wis. 2d 343, 351, 558 N.W.2d 653, 656 (Ct. App. 1996).

Lenz makes several additional arguments to support his interpretation of § 948.22, STATS. He claims his construction should be adopted because: (1) the statute is penal and should be narrowly construed; (2) if the statute is not narrowly construed, it could be used to unconstitutionally imprison for debt; (3) it is unreasonable or absurd that an obligated parent is at risk for life. We address these arguments in turn.

■

Lenz's contention that we should narrowly construe this statute because it is penal in nature is unconvincing. The rule of lenity does not require us to give a penal statute the narrowest possible construction where to do so would be inconsistent with legislative intent. *See State v. Knutson, Inc.*, 196 Wis. 2d 86, 97, 537 N.W.2d 420, 423 (Ct. App. 1995) ("The primary goal of statutory construction is to carry out the legislature's intent; the tools of statutory construction, including the rule of lenity, cannot be used in

disregard of the purpose of the statute"). We have already determined that the legislative intent of § 948.22, STATS., is to deter nonsupport in part by permitting prosecution of cases involving arrearages, even after the child attains majority.

Lenz also contends that we must narrowly construe § 948.22, STATS., to preserve the statute's constitutionality. He claims that if convicted and incarcerated, he would be unconstitutionally imprisoned for a debt, contrary to WIS. CONST. art. I, § 16. We are unpersuaded that the statute should be narrowly construed to avoid any constitutional issue relating to imprisonment for debt. Article I, § 16, provides "No person shall be imprisoned for debt arising out of or founded on a contract, express or implied." Our supreme court has discussed this section:

> The constitutional prohibition against imprisonment is for a debt, not any kind of debt, but only such debt as arises out of or is founded upon a contract. Ordering a husband to pay his wife's attorney's fees in a divorce action, even if he stipulated to pay the fees, is not a debt arising out of or founded upon a contract of his. It may be his wife's debt, but it is not his nor does it become his debt. The imprisonment must be for the debt.

*O'Connor v. O'Connor*, 48 Wis. 2d 535, 540, 180 N.W.2d 735, 738 (1970). Similarly, ordering a parent to pay child support is not a debt arising out of or found upon a contract.[5]

Finally, Lenz asserts that holding a parent ordered to pay support at risk for life for criminal non-

---

[5] Lenz offers no argument why we should consider child support to be a debt arising out of or founded upon a contract. We decline to develop his argument for him. *See State v. Petitt*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992)

support due to arrearages is unreasonable or absurd. We disagree that our construction of the statute leads to absurd results. Requiring a parent to pay the support ordered of them is not unreasonable or absurd, and subjecting the parent to criminal penalties for failing to pay support is another tool the legislature has provided to remedy the societal burdens caused by nonsupport.

### *Are the tax refund intercepts payments of child support?*

Lenz contends that he did not fail to provide child support when his tax refunds were intercepted and applied toward his support obligations. Because these refunds were intercepted during some of the charged 120-day nonsupport periods, he argues that those charges should be dismissed. The circuit courts refused to consider the intercepts as payments because Lenz did not "voluntarily" pay them. He contends this is error and we agree.

The intercepts are payments from Lenz's assets. Although he did not directly make them, we agree that payments made by intercept should be deemed support payments by the parent. The refunds were intercepted during and applied to specific 120-day periods in 1994, 1995 and 1996. It is sufficient that sums were paid to meet Lenz's support obligation. The charges, to the extent they include within the 120-day period charged, a month during which intercepts were received and applied, should be dismissed.

We decline to read into the statute a requirement that a payment be voluntarily made. If we were to read voluntariness into the statute, we would be left with an inquiry that is unworkable and unmanageable. Where would the line of voluntariness begin or end? Is the

540

payment of the support obligation pursuant to a court-ordered wage assignment voluntary? If Lenz knows his tax refunds will be intercepted and still files for them, is his payment voluntary? Are payments made on his behalf by others voluntary? We decline to adopt voluntariness as a test.

In conclusion, we determine that § 948.22, STATS., criminalizes the failure to pay arrearages even after the child for whom support is ordered attains majority. The statute does not distinguish between support and arrearages, and the "amount which a person is ordered to provide for support of a child" is not transformed by the course of time, the child turning eighteen or its denomination. We also determine that if a defendant's tax refunds are intercepted and are allocated to a given period, the defendant cannot be said to have failed to provide support for that period. Accordingly, the courts' orders are affirmed in part, reversed in part and the cause is remanded for proceedings consistent with this decision.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.